UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>STILLWATER ASSET BACKED OFFSHORE FUND LTD.,<br><br>      Debtor. | Chapter 11<br><br>Case No. 12-14140 (MEW) |
| Stillwater Liquidating LLC,<br><br>      Plaintiff,<br><br>v.<br><br>Net Five at Palm Pointe, LLC; Net Five Holdings LLC; Planet Five Development Group LLC; Net Five South Beach LLC, Net Five at Kings Hotel LLC; Planet Five at Gerova LLC; Paul Rohan; Eric Halter; Gregory Laubach; Paradigm Credit Corporation; Camden Real Estate Opportunity Fund LLC; ASGAARD FUND, LP; Saunders Capital LLC; Duval Partners LLC; Calhoun Commercial Construction LLC; WAMOJ LLC; Judge Street Realty LLC; EHM Investments LLC; FTTD3 LLC; SFN Dekalb Holdings LLC; Memphis Blues Acquisition Group, LLC; Shreeji Hospitality of Charlotte, LLC; Redrock Kings, LLC; John R. and Yvette Daniel III; Stephen J. and Vicki McDonald,<br><br>      Defendants.<br><br>Gerova Financial Group Ltd.,<br><br>      Nominal Defendant. | Adv. Pro. No. 14-2245 (MEW) |

**CAMDEN REAL ESTATE OPPORTUNITY FUND I, LLC'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
<u>DISMISS THE COMPLAINT AGAINST IT IN ITS ENTIRETY</u>**

SMILEY WANG-EKVALL, LLP

Evan D. Smiley, *pro hac vice*
Autumn D. Spaeth, *pro hac vice*
3200 Park Center Drive, Suite 250
Cosa Mesa, CA 92626
Tel: (714) 445-1000
Fax: (714) 445-1002

-and-

SILLS CUMMIS & GROSS P.C.

Andrew H. Sherman
Lucas F. Hammonds
101 Park Avenue, 28th Floor
New York, NY 10178
Tel: (212) 643-7000
Fax: (212) 643-6500

*Co-counsel for Camden Real Estate Opportunity Fund I, LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 3

I.     PLAINTIFF'S ALLEGED STANDING ............................................. 3

II.    SPECIFIC ALLEGATIONS AGAINST CAMDEN ........................... 4

III.   GENERAL ALLEGATIONS RELATED TO CLAIMS AGAINST
       CAMDEN ........................................................................................... 6

IV.    A BANKRUPTCY COURT AUTHORIZED THE $2.7 MILLION
       PARADIGM LOAN ON THE ST. AUGUSTINE PROPERTY .......... 7

LEGAL ARGUMENT ............................................................................................... 9

I.     STANDARD ON A MOTION TO DISMISS ..................................... 9

       A.     Heightened Pleading Requirement: The Complaint Improperly
              Lumps Defendants Together and Fails to Allege Facts with
              Particularity Against Camden .................................................. 9

       B.     Rule 8 Pleading Requires Sufficient Facts to State a Plausible Claim .... 11

       C.     Material Subject to Review on a Motion to Dismiss .............................. 11

II.    11 U.S.C. §544(B) RECOVERY OF SUBSEQUENT TRANSFERS
       (COUNT V) AGAINST CAMDEN MUST BE DISMISSED FOR
       FAILURE TO STATE A CLAIM ...................................................... 14

III.   WITHOUT SECTION 544, THERE IS NO SUBJECT MATTER
       JURISDICTION ............................................................................... 18

       A.     There is No "Arises Under" Jurisdiction .................................. 19

       B.     There is No "Arises In" Jurisdiction ......................................... 19

       C.     There is No "Related To" Jurisdiction ...................................... 21

IV.    CAMDEN IS NOT THE SUBSEQUENT TRANSFEREE OF A
       FRAUDULENT TRANSFER PURSUANT TO AND NEW YORK
       DEBTOR AND CREDITOR LAW §§ 278 AND/OR 279 (COUNT V) ............ 25

       A.     Actual Fraudulent Transfer Pursuant to § 276 ........................ 26

       B.     Constructively Fraudulent Transfer Pursuant to Sections 273, 274
              and 275 ...................................................................................... 26

       C.     Plaintiff's Claim Fails Because it has Not Alleged that Property of
              SABF was Transferred or that the Stillwater Funds' Creditors have a
              Right to Collect from the Assets of AUG ................................. 27

       D.     The St. Augustine Property was Not Conveyed ....................... 28

       E.     Plaintiff is Judicially Estopped from Asserting the St. Augustine
              Property was Owned by Gerova and Not AUG ........................ 30

       F.     Camden Gave Value for its Interests in the St. Augustine Property ........ 36

## TABLE OF CONTENTS
(continued)

Page

V.    PLAINTIFF'S TORT AND EQUITABLE CLAIMS ARE BARRED BY THE DOCTRINE OF IN PARI DELICTO (counts VIII, IX, XI, XIV, XV, and XVI) ........................................................................................................... 38

CONCLUSION ................................................................................................................. 40

TABLE OF AUTHORITIES
(continued)

**Page(s)**

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*5-Star Mgmt., Inc. v. Rogers,*
   940 F. Supp. 512 (E.D.N.Y. 1996) ...............................................................12, 13

*Abdul–Rahman v. City of New York,*
   No. 10 Civ. 2778, 2012 WL 1077762 (E.D.N.Y. Mar. 30, 2012) ..........................12

*Ad Rendon Commc'ns, Inc. v. Lumina Americas, Inc.,*
   No. 04-CV-8832, 2007 U.S. Dist. LEXIS 75625, 2007 WL 2962591 (S.D.N.Y. Oct.
   10, 2007) ...............................................................................................................11

*Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.,*
   351 F.Supp.2d 79 (S.D.N.Y.2004) ...........................................................................26

*ASARCO LLC v. Americans Mining Corp.,*
   396 B.R. 278 (S.D. Tex. 2008) ...........................................................................14, 18

*ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd.,*
   493 F.3d 87 (2d Cir.2007)......................................................................................10

*Baumgart v. Potts (In re Potts),*
   353 B.R. 874 (Bankr. N.D. Ohio 2006) ...............................................................14, 15

*Bell Atlantic Corp. v. Twombley,*
   550 U.S. 544, 127 S. Ct. (2007).............................................................................11

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,*
   369 F.3d 212 (2d Cir.2004).....................................................................................11

*Chambers v. Time Warner, Inc.,*
   282 F.3d 147 (2d Cir.2002)................................................................................12, 13

*Clarry v. United States,*
   891 F.Supp. 105 (E.D.N.Y.1995) ...........................................................................12

*Denny v. Barber,*
   576 F.2d 465 (2d Cir.1978) (Friendly, J.)..............................................................10

*DeRosa v. Nat'l Envelope Corp.,*
   595 F.3d 99 (2d Cir.2010).......................................................................................31

*Di Vittorio v. Equidyne Extractive Indus. Inc.,*
   822 F.2d 1242 (2d Cir.1987)....................................................................................9

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Global Network Commc'ns, Inc. v. City of New York*,
  458 F.3d 150 (2d Cir.2006)..........................................................................12

*Grathwol v. Coastal Carolina Developers, Inc.,*
  2015 U.S. Dist. LEXIS 3113 (E.D.N.C. Jan. 9, 2015) Bankruptcy...........................23, 24, 25

*Grubin v. Rattet (In re Food Mgmt. Grp.)*,
  380 B.R. 677 (Bankr.S.D.N.Y.2008) ...................................................................13

*Harris v. New York State Department of Health,*
  202 F.Supp.2d 143 (S.D.N.Y.2002)....................................................................12

*Harsco Corp. v. Segui,*
  91 F.3d 337 (2d Cir.1996)............................................................................10

*HBE Leasing Corp. v. Frank,*
  48 F.3d 623 (2d Cir.1995) ("*HBE Leasing I* ")........................................................26

*HBE Leasing Corp. v. Frank,*
  61 F.3d 1054 (2d Cir.1995) ("*HBE Leasing II* ") .....................................................27

*In re Bernard L. Madoff Inv. Sec. LLC*,
  445 B.R. 206 (Bankr. S.D.N.Y. 2011) ..............................................................14, 18

*In re Dreier LLP*,
  452 B.R. 391 (Bankr. S.D.N.Y. 2011) ...............................................................37

*In re Elan Corp. Sec. Litig.,*
  543 F.Supp.2d 187 (S.D.N.Y.2008)....................................................................10

*In re Fairfield Sentry Ltd. Litig.,*
  458 B.R. 665 (S.D.N.Y.2011)..........................................................................19

*In re Flutie New York Corp.*,
  2004, 310 B.R. 31 (S.D.N.Y.2004)....................................................................27

*In re Gen. Media, Inc.,*
  335 B.R. 66 (Bankr. S.D.N.Y. 2005) ............................................................18, 19, 22, 24

*In re Greater Se. Cmty. Hosp. Corp.,*
  333 B.R. 506 (Bankr. D.D.C. 2005) ..............................................................15, 39

*In re Grumman Olson Indus., Inc.,*
  445 B.R. 243 (Bankr.S.D.N.Y.2011)...................................................................20

*In re Petrie Retail, Inc.,*
  304 F.3d 223 (2d Cir.2002)........................................................................20, 21

TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Residential Capital, LLC,*
   519 B.R. 593 (S.D.N.Y. 2014)............................................................................20, 22

*In re Residential Capital, LLC,*
   No. 12-12020 MG, 2014 WL 8098932 (S.D.N.Y. Sept. 16, 2014) ......................19, 20, 22, 23

*In re Rhodia S.A. Sec. Litig.,*
   531 F.Supp.2d 527 (S.D.N.Y.2007)..........................................................................10

*In re Sharp Int'l Corp.,*
   403 F.3d 43 (2d Cir. 2005)...................................................................................27, 37

*In re Sterling Optical Corp.,*
   302 B.R. 792 (Bankr.S.D.N.Y.2003) ........................................................................20

*Intellivision v. Microsoft Corp.,*
   484 F. App'x 616 (2d Cir. 2012) .............................................................................31

*Kalnit v. Eichler,*
   264 F.3d 131 (2nd Cir. 2001)..................................................................................10

*Kiobel v. Royal Dutch Petroleum Co.,*
   621 F.3d 111 (2d Cir.2010).....................................................................................29

*Kirschner v. Grant Thornton LLP, et al. (In re Refco, Inc. Securities Litigation),*
   628 F.Supp.2d 432 (S.D.N.Y.2008)..........................................................................23

*Kramer v. Time Warner Inc.,*
   937 F.2d 767 (2d Cir.1991)....................................................................................12

*Lia v. Saporito,*
   909 F.Supp.2d 149 (E.D.N.Y.2012) .........................................................................12

*Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P.,*
   487 B.R. 158 (S.D.N.Y. 2013)................................................................................20

*Louis Vuitton Malletier S.A. v. LY USA, Inc.,*
   676 F.3d 83 (2d Cir.2012)......................................................................................12

*Mangiafico v. Blumenthal,*
   471 F.3d 391 (2d Cir.2006).....................................................................................12

*MBNA Am. Bank, NA. v. Hill,*
   436 F.3d 104 (2d Cir.2006).....................................................................................19

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young,*
   No. 91-civ-2923, 1994 U.S. Dist. LEXIS 2929, 1994 WL 88129 (S.D.N.Y. Mar. 15,
   1994) .................................................................................................................9

# TABLE OF AUTHORITIES
(continued)

Page(s)

*MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP,*
No. 14-CV-2197 (VM), 2014 WL 3402602 (S.D.N.Y. July 9, 2014).....................................38

*Mt. McKinley Ins. Co. v. Corning Inc.,*
399 F.3d 436 (2d Cir. 2005).....................................................................................................21

*Neilson v. Straight–Out Promotions, LLC (In re Tyson),*
No. 03–41900(ALG), 2007 WL 2379624 (Bankr.S.D.N.Y. Aug.17, 2007) ..........................23

*New Hampshire v. Maine*,
532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)...................................................30, 31

*Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*,
277 B.R. 20 (S.D.N.Y. 2002).....................................................................................................14

*Pashaian v. Eccelston Props.,*
88 F.3d 77 (2d Cir.1996)............................................................................................................37

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC )*
("BLMIS "), 721 F.3d 54 (2d Cir.2013) ...............................................................................38, 39

*Picard v. JPMorgan Chase & Co*.,
460 B.R. 84 (S.D.N.Y. 2011) *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*.,
721 F.3d 54 (2d Cir. 2013).................................................................................................31, 39

*Polar Int'l Brokerage Corp. v. Reeve*,
108 F. Supp. 2d 225 (S.D.N.Y. 2000).........................................................................................9

*Republic of Ecuador v. Chevron Corp*.,
638 F.3d 384 (2d Cir.2011)........................................................................................................31

*Ret. Sys. v. Citigroup Mortg. Loan Trust Inc*.,
572 F.Supp.2d 314 (E.D.N.Y.2008) ..........................................................................................22

*Rosario v. New York City,*
2013 WL 2099254 (S.D.N.Y.2013)...........................................................................................12

*Roth v. Jennings,*
489 F.3d 499 (2d Cir.2007).........................................................................................................13

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
No. 03 Civ. 3120, 2005 U.S. Dist. LEXIS 16382, 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) ...........................................................................................................................................9

*Shipping Fin. Servs. Corp. v. Drakos,*
140 F.3d 129 (2d Cir.1998)........................................................................................................18

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Winstar Holdings, LLC v. Blackstone Grp. L.P.,*
  No. 07 CV 4634, 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) .............................................20

*Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi,*
  215 F.3d 247 (2d Cir.2000) ...................................................................................................19

STATE CASES

*Kirschner v. KPMG LLP,*
  15 N.Y.3d 446, 912 N.Y.S.2d 508, 938 N.E.2d 941 (N.Y.2010) .....................................38, 39

*Ede v. Ede,*
  193 A.D.2d 940, 598 N.Y.S.2d 90 (3d Dep't 1993) ...............................................................27

FEDERAL STATUTES

11 U.S.C. § 364 ...............................................................................................................7, 8, 33, 34

11 U.S.C. § 506 ......................................................................................................................7, 8, 34

11 U.S.C. § 544 ......................................................................................................................passim

28 U.S.C. § 157 .................................................................................................................................19

28 U.S.C. § 1334(b) ...................................................................................................................19, 21

STATE STATUTES

Del. Code Ann. Title 6, § 18-701 ...................................................................................................27

NEW YORK DEBTOR AND CREDITOR LAW §§ 278 ..............................................15, 25, 26

RULES

Fed. R. Civ. P. 8 ........................................................................................................................11, 29

Fed. R. Civ. P. 9 ..........................................................................................................................9, 26

Fed. R. Civ. P. 12 ..........................................................................................................1, 13, 18, 40

Fed. R. Civ. P. 56 .............................................................................................................................13

Defendant Camden Real Estate Opportunity Fund I, LLC ("Camden"), incorrectly identified in the Complaint as "Camden Real Estate Opportunity Fund LLC," respectfully submits this memorandum of law in support of its motion to dismiss the entire complaint against Camden, specifically Counts Five, Eight, Nine, Eleven, Fourteen and Fifteen, pursuant to *Fed. R. Civ.* P. 12(b)(1) and (6).

## PRELIMINARY STATEMENT[1]

Camden should be dismissed from the Complaint without leave to amend. The St. Augustine Hotel, which is the real property at issue in the Complaint as it pertains to Camden (the "St. Augustine Property" or sometimes "Property"), was never owned by the Debtor, Stillwater Asset Backed Offshore Fund, Ltd. In fact, the Property was acquired by AUG Funding, LLC ("AUG") in 2007, and transferred from AUG to Net Five at South Beach ("Net Five SB") as contemplated by an October 2011 order of Judge Carla E. Craig in the *In re AUG Funding, LLC* chapter 11 bankruptcy case, Case No. 11-46167 (CEC), then pending in the Eastern District of New York. Judge Craig's order also authorized a loan for $2,700,000 from defendant Paradigm. The AUG Court also found that the $2,700,000 Paradigm loan was in the best interest of the estate, done in good faith, at arm's length, and in the best interest of the debtor, AUG.

Incredibly, Plaintiff now asks this Bankruptcy Court to hold Camden, a junior lender, liable for the Paradigm loan, as well as its own $721,000 loan, as a fraudulent transfer, as well as other damages in an amount over $50,000,000 when the Property was never owned by the Debtor, and was transferred pursuant to a federal court order. Richard Rudy, the Stillwater principal, makes representations under oath on behalf of AUG to the AUG Bankruptcy Court which are directly contrary to the facts alleged in the Complaint. Specifically, Mr. Rudy represented that

---

[1] Capitalized terms undefined in the Preliminary Statement shall have the meanings subsequently ascribed to them in this Memorandum of Law.

AUG was the title owner to the Property as of August 2011, and further represented that he was a senior executive with Net Five, the asset manager of the St. Augustine Property. Despite these uncontroverted facts, Plaintiff alleges that Camden's loan made shortly thereafter is based upon and is part of a fraud and conspiracy by others, and that Camden should have known or suspected the fraud based upon New York litigation and financial articles. Moreover, the Complaint completely ignores that Net Five SB acquired the Property for $2,700,000 from AUG and relieved it of a $2.7 million liability, and in fact falsely alleges that no consideration was exchanged.

The Complaint in this action relies upon a false premise: alleged guilt by association. The Plaintiff, an entity created as a result of a post-petition settlement agreement, seeks to tar Camden, a company in the business of lending, with allegations of other people's wrongdoing while blithely ignoring requisite pleading requirements. On even superficial examination, it is evident that the Plaintiff is relying on lumped allegations, an oversimplification of very complicated concepts, documents, business structures, and claims, and confusing alleged connections to attempt to extend the Debtor's claims against Gerova to more than 25 other entities and individuals, including Camden. Plaintiff makes no specific allegations of wrong doing by Camden.

The Complaint must be dismissed for failure to state a claim and for lack of subject matter jurisdiction. Because the Florida Property where Camden made a second-priority loan behind the Paradigm $2,700,000 first (and later took title after default) was never owned by the Debtor, Section 544 is unavailable to Plaintiff. Without property of the Debtor and Section 544, the claims asserted in this matter against Camden are the state court and common law claims of non-debtor third parties that are completely unrelated to the bankruptcy case other than the fact that they could hypothetically affect the distribution to the Estate's creditors. But even this tangential affect exists only due to a settlement agreement by which the Debtor and third parties agreed to pool their assets and split the proceeds. This Plaintiff cannot artificially create rights under a

settlement or sale of a non-debtor under 11 U.S.C. 544 where there has been no substantive

consolidation.  Courts have found this attenuated nexus to a bankruptcy case, where the plan has

been confirmed, to be insufficient to create subject matter jurisdiction.

The state court claims have also been insufficiently pled.  With respect to Count V,

Plaintiff's claims fail because Plaintiff has not alleged that the St. Augustine Property was

property of the Stillwater Funds or any facts to establish that the Stillwater Funds' creditors had

the ability to collect their claim from the assets of the owner of the St. Augustine Property, AUG.

Further, Plaintiff's allegations against Camden admit that the St. Augustine Property was owned

by AUG from May 2007 to December 20, 2011, and as such was not transferred at the times

alleged in the Complaint, and was not transferred by Stillwater to Gerova or from Gerova to Net

Five as alleged in the Complaint.  Importantly, Camden gave over $3,400,000 ($2,700,000 plus

$721,000) in fair consideration in exchange for its interest in the St. Augustine Property.  With

respect to Counts VIII, IX, XI, XIV, XV, and XVI, Plaintiff's claims are barred by the doctrine of

*in pari delicto* because it stands in the shoes of the very same wrongdoers which it asserts Camden

conspired with and aided and abetted.

## STATEMENT OF FACTS[2]

### I.    PLAINTIFF'S ALLEGED STANDING

Plaintiff is a Delaware limited liability company formed pursuant to a settlement

agreement ("Settlement Agreement") which was also confirmed in the chapter 11 case of

Stillwater Asset Backed Offshore Fund Ltd. (the "Debtor") filed on October 3, 2012 ("Petition

Date").  (Compl., ¶ 9.)  Under the Settlement Agreement, the Debtor and certain other Stillwater

fund entities agreed to consolidate their tangible and intangible assets.  The Settlement Agreement

---

[2]The Statement of Facts is drawn from the allegations in the Complaint, which are accepted as true solely for purposes
of this motion (Camden reserves all rights with respect to the allegations in the Complaint, including the right to deny
and contest them), as well as publicly available documents subject to judicial notice or that were referred to by
Plaintiff in the Complaint, which are attached to Camden's Request for Judicial Notice ("RJN") and cited as "Ex.__".

also provides for the transfer to Plaintiff of the following: (1) Gerova Financial Group, Ltd.'s ("Gerova Financial") and Gerova Holdings, Ltd.'s ownership interests in assets formerly belonging to the Stillwater fund entities; (2) Gerova's interest in Net Five; (3) and claims against third parties related to the Gerova Transfer (defined below). The "certain other Stillwater fund entities" were not substantively consolidated with the Debtor's bankruptcy estate, nor were any of the Gerova entities. In short, in addition to the assets of the Debtor, assets of certain other Stillwater funds, "all of the claims owned by Gerova … formerly owned by the Stillwater Funds and all of the claims owned by the Stillwater Funds, were transferred to Plaintiff." (Compl., ¶ 10.)

## II.    SPECIFIC ALLEGATIONS AGAINST CAMDEN

Plaintiff makes the following specific allegations against Camden and the St. Augustine Property:

- Upon information and belief, AUG Funding LLC ("AUG"), a Delaware LLC, was formed in November of 2005 to lend funds to St. Augustine Hotel, LLC ("St. Augustine LLC") for the acquisition and conversion of the St Augustine Property into luxury condominiums and lo acquire the vacant lot located adjacent thereto. AUG was wholly owned by JPS Loan Holdings I, LLC, which was wholly owned by SABF, which is one of the Stillwater Funds transferred to the Plaintiff pursuant to the GSA (Compl., ¶ 125)

- Upon information and belief, in November, 2005, St. Augustine LLC acquired the St. Augustine Property with the funds loaned by AUG, which loan was secured by a mortgage and a security agreement on the St Augustine Property. (Compl., ¶ 126.)

- Upon information and belief, ultimately, the St. Augustine Property was not converted and St. Augustine LLC defaulted on its loan to AUG and then filed bankruptcy. AUG obtained title to the St. Augustine Property in May, 2007 pursuant to a bankruptcy §363 sale. (Compl., ¶ 127.)

- According to documents, on May 7, 2008, AUG executed and delivered a promissory note to Stonegate Bank, which later assigned its interest to EWE Loan No. 4, LLC ("EWE"), in the original principal amount of $2,000,000. (Compl., ¶ 128.)

- On January 20, 2010, the St Augustine Property was transferred to Gerova pursuant to the Gerova Transfer without consideration, though neither the deed nor the public records for AUG were altered to reflect the transfer. (Compl., ¶129.)

- On May 26, 2010, the St. Augustine Property was transferred to Net Five pursuant to the Operating Agreement, although the deed was not changed.  (Compl., ¶ 130.)

- Upon information and belief, neither Gerova nor Net Five continued to pay on the EWE note, and EWE initiated a foreclosure proceeding on the St. Augustine Property on October 14, 20 I 0. On June 10, 2011, the court in the foreclosure proceeding entered a final judgment decreeing that AUG owed EWE $2,375,436.98 and setting a foreclosure sale for July 19, 2011.  (Comp., ¶131.)

- On July 18, 2011, AUG filed for bankruptcy relief in an attempt to restructure EWE's note.  (Compl., ¶ 132.)

- Thereafter, upon information and belief, on August 2, 2011, Net Five conducted a limited appraisal determining that the value of the St. Augustine Property was $6.4 million.  (Compl., ¶ 133.)

- On November 24, 2011, the bankruptcy court dismissed AUG's bankruptcy case upon the motion to dismiss filed by EWE.  (Compl., ¶ l34.)

- According to public tax records, before another foreclosure sale could commence on the St. Augustine Property, on December 20, 2011, AUG transferred its interest in the St. Augustine Property to Net Five SB, whose sole managing member is Net Five, for just over $2.3 million (likely just enough to pay off EWE's loan), even though the St. Augustine Property had been recently appraised at the direction of Net Five for $6.4 million.  (Compl., ¶ 135.)

- The special warranty deed evidencing the transfer of the St. Augustine Hotel to Net Five SB was signed by Rachel Lanham as Special Vice President of Gerova-again Net Five utilized a "special vice president" to effectuate the transfer.  (Compl., ¶ 136.)

- Net Five SB subsequently granted two mortgages on the St. Augustine Property.  Upon information and belief, the first was granted to Paradigm, a commercial and/or hard money lender on December 20, 2011 to secure a loan of an approximately $2 million. (Compl., ¶ 137.)

- The second mortgage was granted to Camden, another commercial lender and/or hard money lender, on January 13, 2012 to secure a $721,000 loan.  (Compl., ¶ 137.)

- Upon information and belief, $700,000 of this loan was used to fund an escrow (the "Winn Dixie Escrow") required by Jasmine Resources Capital Group LTD as lender on certain property Net Five was attempting to acquire in Islamorada, Florida to build a Winn Dixie (the "Winn Dixie Property"). Upon information and belief, the Escrow was stolen by George Kalivretenos ("Kalivretenos"), an employee of the escrow agent. Upon information and belief, the FBI has begun an investigation and has seized property of Kalivretenos, and Net Five has filed a claim with the FBI for payment of the stolen Winn Dixie Escrow.  (Compl., ¶ 137.)

- To the extent the interest in the St. Augustine Property is avoided, Plaintiff would be entitled to any distributions received by Net Five from the FBI and any other claim or relief Net Five is entitled to for the stolen Winn Dixie Escrow. (Compl., ¶ 138.)

- According to the public records, Net Five SB subsequently sold the St. Augustine Property to Camden on June 6. 2012. The purchase price is unclear from records produced, however, the public records provide that the sale price was just over $400,000. (Compl., ¶ 139.)

- The liens placed by both Camden and Paradigm and the sale to Camden were effectuated under the backdrop of the litany of suspicious conduct and transfer documents, and after the commencement of the ERFF Action, Goldberg and Russo Actions, after publication of the Dalrymple Report, publication of numerous articles reporting that Gerova was tied to ponzi scammers, and after detailed claims had been filed in federal and state courts calling into question the fraudulent transfers by Stillwater and Gerova, the insolvency of such entities, transactions with Net Five, and other improper conduct, and after Gerova's stock was dclisted from the New York Stock Exchange. Notwithstanding, Camden and Paradigm both encumbered the St. Augustine Property and paid the loan proceeds to Net Five, and in the case of Camden, acquired the fee interest in the subject property. (Compl., ¶ 140.)

- In addition to the foregoing, upon information and belief, Paradigm, as a lender who made multiple loans to Net Five, was familiar with Net Five and on notice of the questionable and irregular conduct and documentation and Net Five's fraudulent scheme. (Compl., ¶ 141.)

- The transfers and encumbrances to Paradigm and Camden also took place despite use of suspect documents when Net Five acquired the St. Augustine Property by documents signed by representatives of Gerova. Upon information and belief, the transfer to Camden also took place for less than reasonably equivalent value given the so-called $6.4 million value of the St. Augustine Property. Notwithstanding, the transfer to Camden closed. (Compl., ¶ 142.)

- Neither SABF nor any Stillwater entity received any of the loan proceeds or any consideration for Camden and Paradigm encumbering the St. Augustine Property or upon the sale of such property. (Compl., ¶ l43.)

- Neither SABF nor any Stillwater entity received any of the sale proceeds or any consideration for the transfer of this property to Gerova and then subsequently to Net Five. (Compl., ¶ 144.)

### III.   GENERAL ALLEGATIONS RELATED TO CLAIMS AGAINST CAMDEN

Plaintiff makes the following general allegations relating to claims against Camden:

- Specifically, in May, 2010 just four months after receipt of the Stillwater Assets pursuant to the Gerova Transfer – Gerova entered into an agreement with Planet Five, a Florida based alleged real estate developer, to "contribute" the Real Property Interests to the joint venture. (Compl., ¶ 59.)

- … [T]he Stillwater Real Property Interests to Net Five (and subsequent transferees), on or about May 26, 2010, a so-called Operating Agreement of Net Five (the "Operating Agreement") was entered into by and among the initial members: (i) Gerova,… (ii) Planet Five Development Group, LLC…signed by Rohan; (iii) Planet Five Gerova, … signed by Rohan….. (Compl., ¶ 62.)

- At the time the Operating Agreement was signed, the documents provided that Planet Five Gerova held a 39% interest and contributed $3,900 plus the appraised net asset value of the Planet Five Properties …; Gerova held a 49% interest and contributed $4,900 plus the appraised net asset value of the Gerova Real Estate Portfolio … (Compl., ¶63.)

## IV.    A BANKRUPTCY COURT AUTHORIZED THE $2.7 MILLION PARADIGM LOAN ON THE ST. AUGUSTINE PROPERTY

The Paradigm Loan on the St. Augustine Property was approved by a Bankruptcy Court, found to be based upon arm's length negotiations, made in good faith, based upon reasonable business judgment, and necessary to prevent harm to its creditors.  In AUG's chapter 11 bankruptcy case[3], the Court issued the Order Authorizing Debtor to Obtain Credit Pursuant to 11 USC Section 364(c) and/or (d) and Simultaneously Satisfy Pre-Petition Secured Claims Ancillary Thereto Pursuant to 11 USC Section 506 ("Order Authorizing Debtor to Borrow").  In the Order, the Court made the following findings and determinations:

A. the Debtor [AUG] has been unable to obtain credit on any terms less stringent than those set forth in the [Paradigm] Loan Agreement;

B. an immediate and critical need exists for the Debtor to obtain funds in order to refinance its secured obligation to EWE Loan No. 4, LLC (the "EWE").  Without such funds the estate would continue to incur additional interest, costs, and continuing Chapter 11 administrative obligations to the prejudice of all of the Debtor's [AUG's] creditors;

C. the loan to be made by the Lender shall only be used to re-finance the Debtor's [AUG's] obligations to EWE; …

G. Good cause has been shown for entry of this Order.  The financing authorized hereunder is vital to avoid immediate irreparable harm to the Debtor's estate;

H. The Loan Agreement has been negotiated in good faith between the Debtor [AUG] and the Lender [Paradigm] and *any credit extended, loans made, and other financial accommodations extended to the Debtor by the Lender shall be deemed to have been*

---

[3] Aug's chapter 11 bankruptcy case was referred to in the Complaint at ¶¶ 132-134.

*extended or made, as the case may be, in good faith* within the meaning of §364(e) of the Bankruptcy Code;

I.  The terms of the Loan Agreement are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration

RJN, Exh. "3" (Order Authorizing Debtor to Borrow, Docket No. 52).  Based upon these findings the Court ordered AUG to borrow $2,700,000.00 from Paradigm in accordance with the terms and conditions of the Loan Agreement annexed to the Motion, to use those funds only to pay EWE, to execute any documents called for in the Loan Agreement, and decreed that the Loan Agreement was immediately enforceable against AUG.  The Order states as follows:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.  The Debtor [AUG] is hereby authorized and empowered … **to borrow from the Lender [Paradigm] up to the sum of $2,700,000.00** in accordance with the terms and conditions set forth in the Loan Agreement annexed to the Motion as Exhibit "B" and is hereby approved on a final basis.

2.  **Upon entry of this order, the Debtor's obligations under the Loan Agreement shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor** in accordance with the terms therein.

3.  The Debtor is hereby authorized … to use the net loan proceeds to satisfy the pre-petition secured claim of EWE …

4.  The Debtor is hereby authorized to execute and/or deliver any and all documents necessary or required by the Lender to close upon the loan contemplated under the Loan Agreement. …

6.  To the extent of any inconsistency between the terms of this Order and the Agreement, the terms and provisions of this Order shall govern.

*Id.*  The Loan Agreement, attached as Exhibit "B" to the motion seeking the order authorizing AUG to borrow, reflects that it was anticipated that a new entity would be created to be the borrower.  *See* RJN, Ex. "2" (Motion for Order Authorizing Debtor to Obtain Credit Pursuant to 11 USC Section 364(c) and/or (d) and Simultaneously Satisfy Pre-Petition Secured Claims Ancillary Thereto Pursuant to 11 USC Section 506 ("Motion to Borrow"), Docket No. 46.

**LEGAL ARGUMENT**

I.    **STANDARD ON A MOTION TO DISMISS**

    A.    **Heightened Pleading Requirement: The Complaint Improperly Lumps Defendants Together and Fails to Allege Facts with Particularity Against Camden**

The Complaint improperly lumps Camden and the other defendants together and fails to allege facts with particularity that state a claim against Camden.  Plaintiff's complaint, and every cause of action stated against the non-Gerova defendants, is based upon the theory that the Stillwater assets were stolen and its creditors defrauded.  To survive a motion to dismiss, Federal Rule of Civil Procedure 9(b) requires that in all charges of fraud, the circumstances constituting the alleged fraud must be stated with particularity.  *See Polar Int'l Brokerage Corp. v. Reeve*, 108 F. Supp. 2d 225, 236-37 (S.D.N.Y. 2000).  The purpose of Rule 9(b) is to further three goals: "(1) providing a defendant fair notice of plaintiff's claim, to enable preparation of defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike suits." *Di Vittorio v. Equidyne Extractive Indus. Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987).

As a result, Rule 9(b) does not allow a complaint to merely lump multiple defendants together.  Instead, it requires plaintiffs to differentiate their allegations when suing more than one defendant and to inform each defendant separately of the allegations surrounding his or her participation in the alleged fraud.  *See Apace Commc'ns, Ltd.*, 522 F. Supp. 2d at 517; *Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03 Civ. 3120, 2005 U.S. Dist. LEXIS 16382, 2005 WL 1902780, at *12 (S.D.N.Y. Aug. 9, 2005) (Lumped-together accusations of wrongdoing by undifferentiated groups of defendants is not sufficient to satisfy Rule 9(b)); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91-civ-2923, 1994 U.S. Dist. LEXIS 2929, at *21, 1994 WL 88129, at *7 (S.D.N.Y. Mar. 15, 1994) ("Sweeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule

9(b)").  The Complaint does precisely what these authorities prohibit.  Because Plaintiff is unable to allege specific facts that set forth the particulars of Camden's knowledge of or complicity in Stillwater's, Gerova's, and Net Five's alleged fraud, the Complaint simply tars Camden and the other lender defendants with the alleged bad acts of Stillwater, Gerova, and Net Five.

The Second Circuit has stated that a complaint based upon a fraud must: "(1) detail the statements (or omissions) that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) were fraudulent." *Harsco Corp. v. Segui,* 91 F.3d 337, 347 (2d Cir.1996) (citations omitted).  Plaintiffs may not allege "fraud by hindsight." *See Shields*, 25 F.3d at 1129 (*quoting Denny v. Barber*, 576 F.2d 465, 470 (2d Cir.1978) (Friendly, J.).  A strong inference of fraudulent intent "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id*. at 1128; *accord ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir.2007).  "Motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2nd Cir. 2001); *see In re Rhodia S.A. Sec. Litig.,* 531 F.Supp.2d 527, 548 (S.D.N.Y.2007) ("The complaint must allege more than 'a generalized motive, one which could be imputed to any publicly-owned, for-profit endeavor.' ").  "Any corporation would be motivated to make a profit, to avoid bankruptcy, or to finance the successful launch of a promising product....  These allegations do not support an inference of scienter." *In re Elan Corp. Sec. Litig.,* 543 F.Supp.2d 187, 216 (S.D.N.Y.2008).

### B.    Rule 8 Pleading Requires Sufficient Facts to State a Plausible Claim

Moreover, the Supreme Court has recently stiffened the pleading standards under *Fed. R. Civ. P.* 8(a) to require more specific pleading of the factual basis of every claim for relief[4]. In *Twombly*, the Supreme Court explained that whether a plaintiff has satisfied Rule 8 turns on the *plausibility*, rather than the *conceivability*, of an actionable claim under the facts alleged. *See Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 561-62, 127 S. Ct. at 1968-69 (2007). Specifically, the Court held that a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and that there must be "plausible grounds to infer" actionable conduct. *Id.* at 550 U.S. at 555-56, 127 S. Ct. at 1965; *see also Ad Rendon Commc'ns, Inc. v. Lumina Americas, Inc.*, No. 04-CV-8832, 2007 U.S. Dist. LEXIS 75625, at *10, 2007 WL 2962591, at *3 (S.D.N.Y. Oct. 10, 2007) (if plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed" (brackets in original).*Iqbal* provides that a complaint that does not "plausibly suggest an *illicit accord because it was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed free-market behavior*" that does not *"suggest an unlawful agreement"* must be dismissed. *Id.* at 1950.

### C.    Material Subject to Review on a Motion to Dismiss

Plaintiff's Complaint and documents of which the Court may take judicial notice establish that Plaintiff has not and cannot state a claim against Camden. Courts deciding motions to dismiss must limit their review to facts and allegations contained in (1) the complaint, (2) documents either incorporated into the complaint by reference or attached as exhibits, and (3) matters of which the court may take judicial notice. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir.2004) (citation omitted). When

---

[4] The relaxed pleading standards permitted a bankruptcy trustee do not apply to the Plaintiff Stillwater Liquidating LLC. Here, Plaintiff is not a trustee and, at least with regard to the transaction asserted against Camden, Plaintiff has access to the personal knowledge of the individual from Stillwater and Gerova with personal knowledge of the events at issue, Richard Rudy. As such, there is no justification for applying any lower or relaxed pleading standard.

presented with a motion to dismiss, the Court "is permitted to take judicial notice of matters of

public record," *Clarry v. United States*, 891 F.Supp. 105, 109 (E.D.N.Y.1995); *5-Star Mgmt., Inc.

v. Rogers,* 940 F. Supp. 512, 518 (E.D.N.Y. 1996). "[D]ocket sheets are public records of which

the court c[an] take judicial notice." *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006);

*Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir.2002) (Court may take judicial

notice of public records including court dockets). The Court may take judicial notice of decisions

and submissions filed in prior lawsuits. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d

Cir.1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, ... not for the

truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation

and related filings."). A court may judicially notice any facts not subject to dispute if they "can be

accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

*Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83, 88 (2d Cir.2012). In particular,

"[a]gency determinations and administrative findings are public records of which a court may

properly take judicial notice." *Lia v. Saporito*, 909 F.Supp.2d 149, 161 (E.D.N.Y.2012); *Rosario

v. New York City,* 2013 WL 2099254, at *1 n. 1 (S.D.N.Y.2013) (noticing immigration court

removal order). The principled limitation to this rule is that, while the Court may take notice that

certain documents and statements exist on the record, no statements may be relied upon "for the

truth of the matters asserted." *See, e.g., Global Network Commc'ns, Inc. v. City of New York*, 458

F.3d 150, 157 (2d Cir.2006). A court may also "take judicial notice of admissions in pleadings

and other documents in the public record filed by a party in other judicial proceedings that

contradict the party's factual assertions in a subsequent action." *Harris v. New York State

Department of Health,* 202 F.Supp.2d 143, 173 n. 13 (S.D.N.Y.2002); *Abdul–Rahman v. City of

New York*, No. 10 Civ. 2778, 2012 WL 1077762, at *3 (E.D.N.Y. Mar. 30, 2012) (considering

transcripts from the plaintiff's criminal trial as party admissions made in public records whose

authenticity is not in dispute*).*  In fact, in *5–Star Management, Inc. v. Rogers*, 940 F.Supp. 512, 519 (E.D.N.Y.1996), the Eastern District of New York found it appropriate to consider the plaintiff's principal's admission in a prior state court action for the truth of the matter asserted, without converting the motion to dismiss into a motion for summary judgment, because (1) the plaintiff had made a critical admission that bore substantially upon the legal sufficiency of his complaint, (2) the plaintiff had sufficient notice of the defendant's intention to ask the Court to take judicial notice of the admission and of the factual significance that the defendants sought to attach to the admission, (3) the plaintiff failed to object to consideration of the admission and (4) the plaintiff failed to disavow the admission).

Courts also consider documents not attached to the complaint or incorporated by reference, but "upon which the complaint solely relies and which [are] integral to the complaint." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007); *Grubin v. Rattet (In re Food Mgmt. Grp*.), 380 B.R. 677, 690 (Bankr.S.D.N.Y.2008) ("A court may even consider a document that has not been incorporated by reference where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.").  Accordingly, "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."  Plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.  *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002).  Accordingly, the Court may consider the Complaint, the Settlement documents Plaintiff's standing is based upon, and documents and declarations filed in AUG's 2011 bankruptcy case referred to by Plaintiff in the Complaint and containing critical admissions by Plaintiff's principal that bare substantially upon the legal sufficiency of the Complaint.

**II.    11 U.S.C. §544(B) RECOVERY OF SUBSEQUENT TRANSFERS (COUNT V) AGAINST CAMDEN MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM**

Plaintiff's Count V as asserted against Camden for the recovery of and damages related to the St. Augustine Property pursuant to Section 544(b) must be dismissed failure to state a claim because Camden did not receive property of the Debtor. Plaintiff seeks to avoid or have set aside the transfer of the St. Augustine Property to Camden and seeks an award for the value of the St. Augustine Property as an alleged subsequent transferee of fraudulently transferred property. Pursuant to section 544(b) of the Code, "the trustee may avoid *any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable* under applicable law by a creditor holding an unsecured claim...." 11 U.S.C. § 544(b) (emphasis added). The principal purpose of section 544(b) of the Bankruptcy Code "is to undo pre-petition transfers of property that remove or withhold that property from the estate to the prejudice of creditors." *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20, 29 (S.D.N.Y. 2002).

The Trustee cannot use the strong arm powers if the threshold requirement that the debtor have an interest in the property is not met. *See ASARCO LLC v. Americans Mining Corp.,* 396 B.R. 278, 316 (S.D. Tex. 2008). "Plaintiffs must prove the threshold requirements stated in Bankruptcy Code § 544... the challenged transfer involved an interest of the debtor in property, *i.e.* the debtor transferred property in which it had an interest." *Id.*; *In re Bernard L. Madoff Inv. Sec. LLC*, 445 B.R. 206, 235 (Bankr. S.D.N.Y. 2011) ("Consistent with precedent in this Circuit, a trustee need only demonstrate 'sufficient facts to show, if proved, that the funds at issue originated with the debtor.'") Section 544(b) gives the Trustee the ability to avoid transfers of the Debtor pursuant to state law, which otherwise would only belong to debtor's creditors. The Trustee's avoidance powers under section 544 come into existence as of the commencement of the bankruptcy case. *Baumgart v. Potts (In re Potts),* 353 B.R. 874, 884 (Bankr. N.D. Ohio 2006).

As such, section 544 vests in the trustee the power to assert state law fraudulent transfer claims for "property transferred by the debtor to a third party prior to filing for bankruptcy, but it does not transform the trustee into a 'super creditor' with the ability to raise causes of action separate from those possessed by the estate." *In re Greater Se. Cmty. Hosp.* Corp., 333 B.R. 506, 520 (Bankr. D.D.C. 2005).

The Complaint (Count V) alleges as follows:

Plaintiff incorporates the aforementioned paragraphs as though fully set forth herein. (Compl., ¶ 289)

The Fraudulent Transfers are avoidable under section 544 of the Bankruptcy Code and sections 273, 274, 275, and/or 276 as detailed above and generally herein.  (Compl., ¶ 290.)

Upon information and belief, following the Fraudulent Transfers, the Real Property Interests were transferred or encumbered as collateral to secure certain loans (the "Subsequent Transfers") by Net Five to the Purchaser Defendants and the Lien Defendants (the "Subsequent Transferees") with knowledge of the Red Flags, the Suspicious Paper Trail, fraud and insolvency, as detailed above and summarized in the Chart.  (Compl., ¶ 291.)

The Subsequent Transferees are the immediate or mediate transferees of the Subsequent Transfers from Net Five as follows: …• Camden, a Purchaser and Lien Defendant, purchased and placed a lien on the St. Augustine Property.  (Compl., ¶ 292.)

By reason of the foregoing, the Plaintiff is entitled to judgment pursuant to section 544(b) of the Bankruptcy Code, and on behalf of the Stillwater Funds and their creditors and investors, pursuant to sections 278 and/or 279 of the DCL: (a) avoiding the Subsequent Transfers and preserving the Stillwater Assets; (b) directing that the Subsequent Transfers be set aside and (c) awarding the Plaintiff the value of property transferred in the amount as may be determined at trial, plus interest at the judgment rate and attorneys' fees. (Compl., ¶ 293.)

The Plaintiff's assertion of the Section 544 means that it is asserting the claim of the Debtor's unsecured creditors to avoid Debtor's transfer of property.  *See Baumgart v. Potts (In re Potts),* 353 B.R. 874, 884 (Bankr. N.D. Ohio 2006).  According to the Complaint, besides the Debtor, no other party to the Settlement that created the Plaintiff had section 544 avoidance power.  Plaintiff's general allegations as to the relevant parties are as follows:  Stillwater Asset Backed Offshore Fund, Ltd. is the "Debtor".  (Compl., ¶ 9)  The Debtor is one of the entities that

Plaintiff lumps together and collectively refers to as the "Stillwater Funds". (Compl., ¶ 10, fn 1) The collective assets of the Stillwater Funds are referred to by the Plaintiff as the "Stillwater Assets". (Compl., ¶ 43) The Gerova Transfer is described as the January 20, 2010 merger and asset sale of the Stillwater Assets (including the Real Property Interests) to Gerova. (Compl., ¶ 49.) Plaintiff asserts the Gerova Transfer and the subsequent transfer of the Real Property Interests to Net Five are "Fraudulent Transfers" by the *Stillwater Funds* of the *Stillwater Assets* that were designed to defraud the creditors of the Stillwater Funds. (Compl., ¶ 259.)

Plaintiff's allegations specifically related to Camden (¶¶ 125-144) and the St. Augustine Property make clear that the property was never owned by the Debtor, Stillwater Asset Backed Offshore Fund, Ltd. Plaintiff alleges that "AUG Funding, LLC, a Delaware LLC ("AUG") was formed in 2005 to lend funds to St. Augustine Hotel, LLC ("St. Augustine LLC") for the acquisition and conversion of the St. Augustine Property into luxury condominiums and to acquire the vacant lot located adjacent thereto. AUG was wholly owned by JPS Loan Holdings I, LLC, which was wholly owned by SABF, which is one of the Stillwater Funds transferred to the Plaintiff pursuant to the GSA." (Compl., ¶ 125.) "Upon information and belief, in November, 2005, St. Augustine LLC acquired the St. Augustine Property with the funds loaned by AUG, which loan was secured by a mortgage and a security agreement on the St Augustine Property." (Compl., ¶ 126.) As such, Plaintiff's allegations admit that AUG is not the Debtor nor was it, or the St. Augustine Property, owned by the Debtor as far back as 2005.

Plaintiff's allegations continue, "Upon information and belief, ultimately, the St. Augustine Property was not converted [into condominiums] and St. Augustine LLC defaulted on its loan to AUG and then filed bankruptcy. AUG obtained title to the St. Augustine Property in May, 2007 pursuant to a bankruptcy §363 sale." Thus, according to Plaintiff's allegations, in May 2007, pursuant to a Bankruptcy Court order, the St. Augustine Property was transferred to and

owned by AUG, an entity that is not the Debtor nor was it owned by the Debtor as far back as 2005. Plaintiff's allegations continue, "According to public tax records, before another foreclosure sale could commence on the St. Augustine Property, on December 20, 2011, AUG transferred its interest in the St. Augustine Property to Net Five SB, whose sole managing member is Net Five, for just over $2.3 million …" (Compl., ¶ 135.) Therefore, Plaintiff's allegations admit that just a little over 1 year before the Debtor's Petition Date, the St. Augustine Property was transferred to Net Five SB, another non-Debtor entity that itself was not owned by the Debtor.

Plaintiff's specific subsequent transferee allegations against Camden are as follows: "Net Five SB subsequently granted two mortgages on the St. Augustine Property. Upon information and belief, the first was granted to Paradigm, a commercial and/or hard money lender on December 20, 2011 to secure a loan of an approximately $2 million. The second mortgage was granted to Camden, another commercial lender and/or hard money lender, on January 13, 2012 to secure a $721,000 loan." (Compl., ¶ 137.) "According to the public records, Net Five SB subsequently sold the St. Augustine Property to Camden on June 6, 2012. The purchase price is unclear from records produced, however, the public records provide that the sale price was just over $400,000." (Compl., ¶ 139.) As such, Plaintiff's allegations reveal that from 2005 to the Petition Date, the St. Augustine Property was not property of the Debtor.

Count V, as asserted against Camden, must be dismissed because Plaintiff's allegations fail to allege the threshold requirement stated in Bankruptcy Code section 544. Only a claim asserted on behalf of the Debtor can assert the strong arm avoidance powers of Section 544. 11 U.S.C. §544(b). The Debtor is Stillwater Asset Backed Offshore Fund, Ltd. Plaintiff's allegations establish that the St. Augustine Property was owned by St. Augustine LLC from 2005 to 2007, then by AUG from 2007 to 2011, then by Net Five-SB from 2011 to 2012, when it was transferred to Camden. The St. Augustin Property was not owned by Stillwater Asset Backed Offshore Fund,

Ltd. from 2005 to the Petition Date.  As such, Plaintiff has not and cannot allege the threshold fact

necessary to assert a claim pursuant to section 544.  "Plaintiffs must prove the threshold

requirements stated in Bankruptcy Code § 544 … the challenged transfer involved an interest of

the debtor in property, *i.e.* the debtor transferred property in which it had an interest." *ASARCO*

*LLC v. Americas Mining Corp.,* 396 B.R. 278, 316 (S.D. Tex. 2008); *In re Bernard L. Madoff Inv.*

*Sec. LLC*, 445 B.R. 206, 235 (Bankr. S.D.N.Y. 2011).  As such, Count V must be dismissed with

prejudice against Camden.

## III.    WITHOUT SECTION 544, THERE IS NO SUBJECT MATTER JURISDICTION

Because Count V as stated against Camden must be dismissed for failure to state a claim

pursuant section 544, the entire case against Camden must also be dismissed for lack of subject

matter jurisdiction pursuant to Rule 12(b)(1).  Without Debtor's ability to assert section 544, the

claims against Camden are third party state court claims unrelated to the Debtor's bankruptcy case

except to the extent that they affect distributions to its creditors.  The remaining claims are

asserted by Plaintiff, on behalf of the non-debtor Stillwater Funds (and their creditors) for (1)

liability as subsequent transferee under New York's fraudulent transfer statutes and common law

claims of (2) conspiracy to defraud and convert; (3) aiding and abetting conversion; (4) aiding and

abetting breach of Net Five's fiduciary duties to Gerova; and (5) unjust enrichment.  In short, all

of the claims asserted are state court claim between non-debtor third parties which are not subject

to the Bankruptcy Court's subject matter jurisdiction.

Slightly different rules govern the motion to dismiss under Fed.R.Civ.P. 12(b)(1).  A court

must accept the material factual allegations in the complaint as true, but need not draw inferences

favorable to the plaintiff.  *See In re Gen. Media, Inc.,* 335 B.R. 66, 71-72 (Bankr. S.D.N.Y. 2005);

*Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998).  A court may also consider

materials outside of the pleadings to resolve any jurisdictional disputes, but cannot rely on

conclusory or hearsay evidence. *See In re Gen. Media, Inc.,* 335 B.R. 66, 71-72 (Bankr. S.D.N.Y. 2005); *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir.2000).

Title 28 Section 1334 provides federal district courts with jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11.  28 U.S.C. § 1334(b).  Title 28 further provides that district courts may refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 ... to the bankruptcy judges for the district." 28 U.S.C. § 157(a).  Section 157 also divides matters referred to the bankruptcy court into two categories: core and non-core proceedings.  *See generally* 28 U.S.C. § 157.  Under section 157, a bankruptcy judge may "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11...." 28 U.S.C. § 157(b)(1).

### A.    There is No "Arises Under" Jurisdiction

There is no "arises under" jurisdiction over the case against Camden without section 544(b).  A matter "arises under" title 11 only when the cause of action or substantive right claimed is created by the Bankruptcy Code.  *See MBNA Am. Bank, NA. v. Hill,* 436 F.3d 104, 108–09 (2d Cir.2006); *In re Residential Capital, LLC,* No. 12-12020 MG, 2014 WL 8098932, at *3-4 (S.D.N.Y. Sept. 16, 2014) (*citing In re Fairfield Sentry Ltd. Litig.,* 458 B.R. 665, 674 (S.D.N.Y.2011).  Since the St. Augustine Property was never owned by the Debtor, Count V as asserted against Camden cannot be based upon 11 U.S.C. §544(b).  None of the remaining claims against Camden arise under Title 11, but rather are New York state or common law claims. Claims rooted in state law, and not based on the Bankruptcy Code do not "arise under" title 11.*Id.*

### B.    There is No "Arises In" Jurisdiction

There is no "arises in" jurisdiction for the case against Camden.  A case "arises in" a title 11 proceeding when it is "not based on any right expressly created by [T]itle 11, but nevertheless,

would have no existence outside of the bankruptcy." *In re Residential Capital, LLC,* No. 12-12020
MG, 2014 WL 8098932, at *3-4 (S.D.N.Y. Sept. 16, 2014).  Courts have held that claims based on
pre-bankruptcy agreements entered into under state contract law would exist outside the context of
the bankruptcy and therefore do not qualify for "arises in" jurisdiction.*Id.; see also In re
Residential Capital, LLC*, 519 B.R. 593, 599-600 (S.D.N.Y. 2014).  The remaining claims asserted
against Camden, state law subsequent transferee of a fraudulent transfer, or other common law
claims related to alleged fraud, conversion and breach of fiduciary duty are claims that exist
outside the context of bankruptcy and, therefore, do not create "arises in" jurisdiction.

   Common-law claims closely connected with the administration of the bankruptcy can
qualify as "arising in" a bankruptcy even though they may, in a literal sense, be brought outside a
bankruptcy action if they are determined to be core.  *See Winstar Holdings, LLC v. Blackstone
Grp. L.P.,* No. 07 CV 4634, 2007 WL 4323003, at *3 (S.D.N.Y. Dec. 10, 2007) (noting that
"arising in" jurisdiction is "less clearly defined" than "arising under" jurisdiction).  "Arising in"
claims may include "[m]atters involving the enforcement or construction of a bankruptcy court
order ..." *In re Sterling Optical Corp.,* 302 B.R. 792, 801 (Bankr.S.D.N.Y.2003).  However, not all
"garden-variety common-law claims" qualify.  *See Winstar Holdings,* 2007 WL 4323003, at *3-4.
In holding that a non-debtor contract dispute constituted an "arising in" action, the Second Circuit
outlined the following factors it considered determinative: 1) the dispute was based on the rights
established in a sale order issued by the bankruptcy court; 2) the dispute involved interpretation of
the bankruptcy court's orders; and, 3) the dispute was already before the bankruptcy court as part
of one of the party's claims against the estate.  *See In re Petrie Retail, Inc*., 304 F.3d 223, 229–231
(2d Cir.2002); *see also Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P.,* 487 B.R.
158, 163 (S.D.N.Y. 2013) (finding "arising in" jurisdiction where relief depends on the
interpretation of a bankruptcy court sale order); *In re Grumman Olson Indus., Inc.,* 445 B.R. 243,

248 (Bankr.S.D.N.Y.2011) (finding subject matter jurisdiction where the first two *Petrie* factors

were present).

None of the Petrie factors is present in this case. There is no sale order at issue in this

adversary proceeding. Although Plaintiff obtains its standing from a post-petition, pre-plan

confirmation settlement which was approved by the Bankruptcy Court and referenced in the Plan,

none of the claims asserted by Plaintiff is based upon rights created by a sale order, or requires

interpretation of the Bankruptcy Court's orders. If Count V is not based upon pursuing the

transfer of Debtor's property pursuant to 11 U.S.C. §544, then the Debtor is not really involved in

the lawsuit against Camden, which seeks to adjudicate the rights of non-debtors only. Moreover,

Camden has not filed a proof of claim in the bankruptcy case, so the dispute is not already before

the court on account of such a claim. In another case where the Court found the claims to be non-

core because they sought only to adjudicate the rights of non-debtors, the Second Circuit ruled that

the import of its ruling in *Petrie* is limited because it "addressed a specific factual situation that

demonstrated the dispute's unique effect on a reorganization. *See Mt. McKinley Ins. Co. v.

Corning Inc.,* 399 F.3d 436, 448-450 (2d Cir. 2005) ("Based on the pre-petition nature of the

insurance policies, plaintiffs' attempt to adjudicate the rights of non-debtors only, and the

tangential and speculative effect that resolution of the affiliate insurer claims would have on the

bankruptcy proceeding in Pennsylvania, we conclude that these claims are not core to the

bankruptcy proceeding.") The Debtor's case is not a reorganization and these claims do not have

a unique effect on a reorganization. As such, the non-debtor third party state court claims asserted

against Camden are not closely connected with the administration of Debtor's bankruptcy.

### C.    There Is No "Related To" Jurisdiction

Finally, there is "no related to" jurisdiction either. The only other potentially viable basis

for jurisdiction under section 1334(b), is "related to" jurisdiction. The breadth of the court's

"related to" jurisdiction after the bankruptcy plan has been confirmed is an undecided issue in the

Second Circuit. *In re Residential Capital, LLC,* No. 12-12020 MG, 2014 WL 8098932, at *3-4

(S.D.N.Y. Sept. 16, 2014).One view adopted by some courts is that "once confirmation occurs, the

bankruptcy court's jurisdiction shrinks" and the matter must have "a close nexus to the bankruptcy

plan or proceeding" for the court to exercise bankruptcy jurisdiction. *Id. (citing Penthouse Media*

*Group v. Guccione (In re General Media, Inc.),* 335 B.R. 66, 73 (S.D.N.Y.2005) ("General

Media" ).  Some courts believe that the scope of related to jurisdiction is far broader,

encompassing all actions in which the outcome could have a "conceivable effect" on the bankrupt

estate. *Id. (citing City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc*., 572

F.Supp.2d 314, 317 (E.D.N.Y.2008).

      In cases where the courts have avoided making the determination about which scope

applies, courts have found that the matter meets the more restrictive of the two.  The more

restrictive post-confirmation scope of the "related to" jurisdiction is the "close nexus" test, which

has two elements.  First, the party asserting related-to jurisdiction must demonstrate the existence

of a close nexus by proving that the case affects an "integral aspect" of the bankruptcy

proceedings, such as "the interpretation, implementation, consummation, execution, or

administration of the confirmed plan or incorporated litigation trust agreement." *Id.*  Second, the

bankruptcy plan must expressly provide for retention of jurisdiction of the dispute. *Id.*; *In re*

*Residential Capital, LLC,* 519 B.R. 593, 599-600 (S.D.N.Y. 2014) (applying close nexus standard

to a post-confirmation reorganization case but acknowledging scope of jurisdiction is an open

issue in post-confirmation liquidation cases).  Here, the third party state court claims against

Camden do not "affect an integral part of Debtor's bankruptcy proceeding."  In *In re Residential*

*Capital,* the Court found a sufficiently close nexus where the purpose of the adversary prosecuted

the *debtor's* claims transferred to a liquidating trust pursuant to a confirmed plan that reserved

jurisdiction in these claims to the Bankruptcy Court and where the plan provides that the debtor's creditors will receive a share of any recovery.  2014 WL 8098932, at *3-4, (S.D.N.Y. Sept. 16, 2014)(emphasis added); *see also*, *Kirschner v. Grant Thornton LLP, et al. (In re Refco, Inc. Securities Litigation),* 628 F.Supp.2d 432, 443 (S.D.N.Y.2008) ("This action, moreover, clearly shares a 'close nexus' to the Refco bankruptcy as the claims asserted ... are precisely those causes of action that were transferred by the Refco *Debtors* to the Litigation Trust pursuant to the Plan ... Any funds recovered by the Trustee in this case will be distributed to Refco's general unsecured creditors, thus further evidencing the 'close nexus' between the Trustee's claims and the bankruptcy proceeding") (emphasis added); *accord Neilson v. Straight–Out Promotions, LLC (In re Tyson),* No. 03–41900(ALG), 2007 WL 2379624, at *3 (Bankr.S.D.N.Y. Aug.17, 2007).

Other than its creditors potentially receiving a portion of any proceeds, the case against Camden has no "affect" on Debtor's bankruptcy case.  Debtor confirmed its Plan.  Its assets were transferred to Plaintiff, but it is not Debtor's assets that are being prosecuted against Camden, it is the alleged assets of non-debtor third parties.  Plaintiff also alleges that Debtor's Plan retained jurisdiction over any matters effecting or related to the Settlement that created Plaintiff.  (Compl., ¶11.)  Neither of these justifications is sufficient to create related to jurisdiction.  The Fourth Circuit, which applies the "close nexus" test to post-confirmation jurisdictional analysis, recently rejected a debtor's argument that the potential increase in recovery for creditors from litigation was sufficient to establish a "close nexus".  *See Grathwol v. Coastal Carolina Developers, Inc.,* 2015 U.S. Dist. LEXIS 3113 (E.D.N.C. Jan. 9, 2015) (agreeing with other courts that such a possibility alone was insufficient.)  Bankruptcy courts in the Southern District of New York also rejected this reasoning.  "Even if the notes remain unpaid, and a successful outcome to this litigation would make it easier to pay them, the Court nonetheless lacks subject matter jurisdiction. Plans frequently call for future payments to creditors funded through future operations.  A

bankruptcy court cannot hear a post-confirmation dispute simply because it might conceivably increase the recovery to creditors, because the rationale could "endlessly stretch a bankruptcy court's jurisdiction." *In re Gen. Media, Inc.,* 335 B.R. 66, 75 (Bankr. S.D.N.Y. 2005). Finally, in *Grathwol*, the Fourth Circuit rejected the Plaintiff's allegation that a Plan's retention of jurisdiction, even over a specific adversary, "did not suffice to establish jurisdiction because 'neither the parties nor the bankruptcy court can create § 1334 jurisdiction by simply inserting a retention of jurisdiction provision in a plan of reorganization if jurisdiction is otherwise lacking….'" *Grathwol v. Coastal Carolina Developers, Inc.,* 2015 U.S. Dist. LEXIS 3113, p. 8 (E.D.N.C. Jan. 9, 2015). Thus, Plaintiff does not meet the more restrictive "close nexus" test.

Thus the Court will need to determine that the broader scope of related to jurisdiction applies post-confirmation in the Second Circuit, unless the Court determines that the case against Camden does not meet even that broader standard. The Court should not find that the claims against Camden meet even the lower "conceivable effect" on the Estate test. Here, the Debtor's Plan has been confirmed. Its claims are not being asserted, third party claims are. These claims pre-date the bankruptcy case and exist outside of bankruptcy. The only connection to the Bankruptcy Case is that certain non-debtor entities agreed to transfer their rights to another non-debtor entity (Plaintiff) and to share the proceeds of potential recoveries with the Debtor's creditors. The rights asserted are not based upon the bankruptcy case and do not require the interpretation of bankruptcy court orders. Camden did not file a proof of claim in Debtor's bankruptcy case or buy assets from an Estate sale, or in any other way consent to jurisdiction of the Bankruptcy Court in New York. Camden is based in California, and made a loan on a property to a non-debtor entity in Florida. The only connection to this court is the potential sharing of proceeds and the alleged reservation of jurisdiction over matters related to the Settlement. As stated by the Fourth Circuit, 'neither the parties nor the bankruptcy court can

create § 1334 jurisdiction by simply inserting a retention of jurisdiction provision in a plan of reorganization if jurisdiction is otherwise lacking….'"  *Grathwol v. Coastal Carolina Developers, Inc.,* 2015 U.S. Dist. LEXIS 3113, p. 8 (E.D.N.C. Jan. 9, 2015).  The non-debtor, third party, state court claims asserted against Camden do not arise under, arise in, and are not related to a case under Title 11.  As such, the entire case against Camden should be dismissed for lack of subject matter jurisdiction.

**IV.    CAMDEN IS NOT THE SUBSEQUENT TRANSFEREE OF A FRAUDULENT TRANSFER PURSUANT TO AND NEW YORK DEBTOR AND CREDITOR LAW §§ 278 AND/OR 279 (COUNT V)**

Plaintiff asserts that Camden is the subsequent transferee of the "Fraudulent Transfers" that are avoidable pursuant to sections 273, 274, 275, and/or 276 of NY's Debtors and Creditors Law with knowledge of the Red Flags, the Suspicious Paper Trail, fraud and insolvency.  Sections 278 and 279 provide the remedies available.  Section 278 provides,

> 1.  Where a conveyance or obligation is fraudulent as to a creditor….
> 2.  A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation….

Section 279 similarly provides:

Where a conveyance made or obligation incurred is fraudulent as to a creditor….  As such, a claim against an alleged subsequent transferee, begins with the underlying fraudulent transfer analysis.

Here, Plaintiff's Counts I-IV are actual and constructively fraudulent transfer claims against Gerova and Net Five.  The Complaint alleges two fraudulent transfers.  First, the Complaint alleges Gerova, after a very short diligence period, closed a deal with Stillwater on January 20, 2010 and all of the Stillwater Assets, including the Real Property Interests … were transferred to Gerova as part of a so-called combined merger and asset sale (the "Gerova Transfer)."  (Compl., ¶4.9)  Second, the Complaint alleges Gerova's transfer of the Real Property

Interests to Net Five in May 26, 2010 pursuant to an Operating Agreement ("Net Five Transfer") is also or another fraudulent transfer. As applied to the St. Augustine Property, both theories of fraudulent transfer theories fail.

### A.    Actual Fraudulent Transfer Pursuant to § 276

Section 276 of the NYDCL allows the Trustee to avoid any "conveyance made ... with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." NYDCL § 276. To adequately plead a claim to recover actual fraudulent transfers under the NYDCL, the complaint must state with particularity the factual circumstances constituting fraud under Rule 9(b). *See Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 351 F.Supp.2d 79, 106–07 (S.D.N.Y.2004) (applying the pleading requirements of Rule 9(b) to actual fraud claims under both the Bankruptcy Code and the NYDCL).

### B.    Constructively Fraudulent Transfer Pursuant to Sections 273, 274 and 275

Plaintiff also alleges three different counts of constructively fraudulent transfer against Gerova and Net Five.[5] "The UFCA identifies several situations involving 'constructive fraud,' in which a transfer made without fair consideration constitutes a fraudulent conveyance, regardless of the intent of the transferor." *HBE Leasing Corp. v. Frank,* 48 F.3d 623, 633 (2d Cir.1995) ("*HBE Leasing I* "). Under the DCL, a conveyance by a debtor is deemed constructively fraudulent if it is made without "fair consideration," and, if one of the following conditions is met: (i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL §274; or (iii) the transferor

---

[5] but relies on allegations of fraudulent intent to deny Camden and the other lender defendants the good faith purchaser defense to its claims.

believes that it will incur debt beyond its ability to pay, DCL § 275.  *In re Sharp Int'l Corp.,* 403 F.3d 43, 53 (2d Cir. 2005).  The fair consideration test "is profitably analyzed as follows: (1) ... the recipient of the debtor's property must either (a) convey property in exchange or (b) discharge an antecedent debt in exchange; and (2) such exchange must be a 'fair equivalent' of the property received; and (3) such exchange must be 'in good faith.' " *Id.*, at 53-54 (citing *HBE Leasing Corp. v. Frank,* 61 F.3d 1054, 1058–59 (2d Cir.1995) ("*HBE Leasing II* ") (emphasis omitted); *see also Ede v. Ede,* 193 A.D.2d 940, 941-42, 598 N.Y.S.2d 90, 92 (3d Dep't 1993) ("[F]air consideration requires that the exchange not only be for equivalent value, but also that the conveyance be made in good faith.")

> ### C.    Plaintiff's Claim Fails Because it has Not Alleged that Property of SABF was Transferred or that the Stillwater Funds' Creditors have a Right to Collect from the Assets of AUG

All of the state law claims for fraudulent transfer require that property of the debtor was transferred and that this property be something that debtor's creditors could have realized a portion of its claim.  *See In re Flutie New York Corp.*, 2004, 310 B.R. 31 (S.D.N.Y.2004).  The creditors claim being asserted is that of the Stillwater Funds' creditors and the property transferred is the St. Augustine Property.  (Compl., ¶¶ 125-144 and 293.)  The Complaint, however, alleges that the St. Augustine property is owned by AUG and fails to allege that the Creditors of the Stillwater Funds can realize a portion of their claim from the assets of AUG.  There are no allegations that support the legal conclusion that they are creditors of AUG, or that AUG's assets are subject to the collection efforts of the Stillwater Funds' creditors.

To the contrary, the Complaint alleges that AUG was a Delaware limited liability company.  (Compl., ¶ 125.)  According to Delaware law, a "limited liability company interest is personal property.  A member has no interest in specific limited liability company property."  Del. Code Ann. tit. 6, § 18-701 (West).  Thus, based upon facts alleged in Plaintiff's Complaint, even if

SABF was AUG's member, which it is not, SABF's creditors under Delaware Law would not have the ability to "realize a portion of their claim" from AUG's assets. Because the Complaint does not allege that SABF's property was transferred or that Stillwater Funds' creditors can realize a portion of their claim from AUG's assets, Count V, if intended to be the Stillwater Funds' creditors state fraudulent transfer claim, must be dismissed for failure to state a claim upon which relief can be granted against Camden.

### D.    The St. Augustine Property was Not Conveyed

All claims for actual and fraudulent transfer require the debtor to convey the at-issue property. The Complaint generally alleges the first conveyance was to Gerova, and then from Gerova to Net Five. (Compl., ¶ 259.) According to the Complaint, the Gerova Transfer occurred on January 20, 2010 and the Net Five Transfer occurred on May 26, 2010. (Compl., ¶¶ 49 and 62.) However, according the to the specific allegations asserted against Camden (¶¶ 125-144), AUG obtained ownership of the St. Augustine Property in May 2007 and continued to hold title until December 20, 2011 when it transferred the property to Net Five SB. (Compl., ¶ 127 and 135) The St. Augustine Property was not transferred at either of the times Plaintiff alleges the fraudulent transfers occurred, nor was it transferred to by Stillwater to Gerova or from Gerova to Net Five.

The fact that the St. Augustine Property was not transferred by anyone at the times relevant to this Complaint, is further supported by other specific allegations in the Complaint. Plaintiff admits that AUG borrowed $2,000,000 against the St. Augustine Property in May 2008 (prior to the Gerova Transfer) from Stonegate Bank, which later assigned its interest to EWE Loan No. 4, LLC ("EWE"). (Compl., ¶ 128.) The Complaint further admits that EWE instituted foreclosure proceedings against the St. Augustine Property in October 2010 (after both the Gerova Transfer and the alleged Net Five Transfer) and as a result, on June 10, 2011, obtained a final judgment

against AUG decreeing that AUG owed over $2.3 million to EWE.  (Compl., ¶ 131.)  The Complaint admits that AUG filed for bankruptcy relief in an attempt to restructure the EWE note on July 18, 2011 (after both alleged fraudulent transfers).  (Compl., ¶ 132.)  The Complaint admits the AUG's bankruptcy case was dismissed upon a motion to dismiss filed by EWE and that AUG then transferred the St. Augustine Property to Net Five SB for just over $2.3 million "(likely just enough to pay of EWE's Loan").  (Compl., ¶¶ 134 and 135.)

All of these allegations are consistent with AUG's continued ownership of the St. Augustine Property from May 2007, before the Gerova Transfer, through December 20, 2011.  As such, the property that Camden ultimately loaned money against and obtained from Net Five SB when it could not repay the loan, the St. Augustine Property, was never conveyed to Gerova as part of the Gerova Transfer or by Gerova to Net Five on May 26, 2010.  Since the St. Augustine Property was not transferred as part of either of the alleged fraudulent transfers, Camden cannot be liable as a subsequent transferee of non-existent transfers.

Despite the detailed factual contradictory allegations, the Complaint alleges in a conclusory fashion that the St. Augustine Property was transferred on January 20, 2010 to Gerova as part of the Gerova Transfer.  With no factual allegations in support, conclusory statements need not be taken as true by the Court on a motion to dismiss.  *See Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 124 (2d Cir.2010) (discounting legal conclusions clothed in the factual garb.) Plaintiff's allegations lump together and collapse multiple levels of entities together without any assertion of the legal basis for doing so.  Rule 9's heightened pleading standard, and even Rule 8's plausibility pleading requirement, do not permit this unexplained and unjustified lumping or collapsing.  The separateness of legal entities is recognized in the law, and in fact is the fundamental underlying reason for the existence of legal entities.  Unless a court of law determines

there is a legal basis not to do so, which has not occurred, the legal separateness of these legal

entities must be recognized and upheld.

**E.    Plaintiff is Judicially Estopped from Asserting the St. Augustine Property was Owned by Gerova and Not AUG**

Plaintiff cannot amend the Complaint to assert the St. Augustine Property was Transferred

to Gerova because of the doctrine of judicial estoppel.  Stillwater's Principal, Richard Rudy, a

signatory to the Settlement Agreement that gives Plaintiff its standing, signed AUG's bankruptcy

Petition, Schedules and Statement of Financial Affairs under oath.  (RJN, Ex. "1" (Docket Nos. 1-

7).  In this bankruptcy case, which was referred to in paragraphs 132-134 of the Complaint, Mr.

Rudy represented to the Bankruptcy Court that AUG owned the St. Augustine Property which was

encumbered by EWE's loan which had an outstanding balance of $2,375,436.98.  RJN, Ex. "1"

(Docket No. 25).  According to the docket, AUG sought and obtained Court approval to use

EWE's cash collateral to pay employees.  RJN, Ex. "1"  (Docket No. 24.)  According to the

docket, AUG obtained a Bankruptcy Court order authorizing it to obtain credit and simultaneously

satisfy pre-petition secured claims.  RJN, Ex. "1" (Docket Nos. 46, 48, 52).

The United States Supreme Court has described the doctrine of judicial estoppel in the

following terms:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.  This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.

*New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (internal

quotation marks, brackets, and citation omitted).  The purpose of the doctrine "is to protect the

integrity of the judicial process by prohibiting parties from deliberately changing positions

according to the exigencies of the moment," and because judicial estoppel is designed "to prevent

improper use of judicial machinery," it is "an equitable doctrine invoked by a court at its discretion." *Id.* at 749-50, 121 S.Ct. 1808 (internal quotation marks omitted). Nevertheless, in evaluating whether to apply the doctrine of judicial estoppel, courts generally look for the existence of three factors: (1) that a party's new position is "clearly inconsistent" with its earlier position, (2) that the party seeking to assert this new position previously persuaded a court to accept its earlier position, and (3) that the party "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 618-19 (2d Cir. 2012). But the Supreme Court has made clear that these factors do not constitute "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," and that "[a]dditional considerations may inform the doctrine's application in specific factual contexts." Id.; *see also DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir.2010) (noting that "[t]ypically, judicial estoppel will apply if" these factors are present). The Second Circuit has "further limit[ed] judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Id.* (internal quotation marks omitted); *see also Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 397 (2d Cir.2011).

All of the factors supporting judicial estoppel are present here. Plaintiff obtained the claims it asserts against Camden from a settlement agreement involving the Stillwater Funds, Gerova, their investor creditors and their principals, including Richard Rudy. As such, Plaintiff stands in the shoes of these parties. *See Picard v. JPMorgan Chase & Co.,* 460 B.R. 84, 97 (S.D.N.Y. 2011*).* To take the position that Gerova and not AUG owned the St. Augustine Property is clearly inconsistent with Mr. Rudy's representations to the Bankruptcy Court which persuaded the Court to issue several orders consistent with AUG's ownership.

In AUG's bankruptcy case, Mr. Rudy, a former Stillwater principal and former Gerova Principal, represented to the Bankruptcy Court that AUG owned the St. Augustine Property. RJN,

Ex. "4" (Declaration of Richard Rudy). Based upon its ownership of the St. Augustine Property, a review of the Docket of AUG's bankruptcy case reveals that in the Summer of 2011, AUG obtained an order permitting it to use EWE's cash collateral to pay employees, an order employing counsel, and an order approving the debtor to borrow and pay EWE's pre-petition secured claim. See RJN, Ex. "1" (Docket). To assert now, that the St. Augustine Property had been transferred from AUG to Gerova is clearly inconsistent these position that AUG owned the property which resulted in multiple orders based upon this premise. It is clearly inconsistent with the request for and the eventual issuance of a court order authorizing AUG to borrow against the St. Augustine Property in order to pay of the EWE loan.

If Plaintiff is not now estopped, it will derive an unfair advantage and impose an unfair detriment on Camden which is being sued for the full value of the St. Augustine Property on the basis that the Paradigm Loan was a fraudulent transfer and despite the fact that Camden obtained the St. Augustine Property subject to the Paradigm loan which was also in default and had to be cured. (Compl., ¶¶ 124-144.) The Paradigm loan provided AUG with $2.7 million to pay off its debt to EWE that originated in May 2008, prior to the alleged Gerova Transfer.

A review of the docket reveals that the Bankruptcy Court issued an order approving the Paradigm loan on the St. Augustine Property in October 2011. *See* RJN, Ex. "1" (Docket). A review of the Order Authorizing AUG to Borrow (Docket No. 52) reveals the need to protect judicial integrity and the unfair detriment to Camden (and Paradigm) if judicial estoppel is not applied. *See* RJN, Ex. "3" (Order Authorizing AUG to Borrow). On Motion by AUG, on October 18, 2011, the Honorable Carla E. Craig signed the order which authorized AUG to borrow $2,700,000.00 from Paradigm Credit Corp. and to satisfy EWE's secured claim in accordance with a Loan Agreement attached to the motion (Docket No. 46). In the Order, the Court makes the following relevant findings and determinations:

A.  the Debtor has been unable to obtain credit on any terms less stringent …;

B.  an immediate and critical need exists for the Debtor to obtain funds in order to re-finance its secured obligation to EWE Loan No. 4, LLC (the "EWE").  Without such funds the estate would continue to incur additional interest, costs, and continuing Chapter 11 administrative obligations to the prejudice of all of the Debtor's creditors;

C.  the loan to be made by the Lender shall only be used to re-finance the Debtor's obligations to EWE;

D.  the Debtor reasonably believes that it would not be able to obtain credit pursuant to §364(a) and/or (b) …

G.  Good cause has been shown for entry of this Order. The financing authorized hereunder is vital to avoid immediate irreparable harm to the Debtor's estate;

H.  The Loan Agreement has been negotiated in good faith between the Debtor and the Lender and *any credit extended, loans made, and other financial accommodations extended to the Debtor by the Lender shall be deemed to have been extended or made, as the case may be, in good faith* within the meaning of §364(e) of the Bankruptcy Code;

I. *The terms of the Loan Agreement are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration*

RJN, Ex. "3" (Order Authorizing AUG to Borrow).  In short, the Court found that the Paradigm Loan was in the best interest of AUG's creditors, was as the best rates it could obtain at the time, was negotiated in good faith, that the Loan and credit extended were made in good faith, that the loan terms were fair and reasonable and reflected the exercise of prudent business judgment and are supported by reasonably equivalent value and fair consideration.

Based upon these findings the Court ordered AUG to borrow $2,700,000.00 from Paradigm in accordance with the terms and conditions of the Loan Agreement, to use those funds only to pay EWE, to execute any documents called for in the Loan Agreement, and decreed that the Loan Agreement was immediately enforceable against AUG.  The relevant portions of the Order are as follows:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.  The Debtor is hereby authorized and empowered … <u>to borrow from the Lender up to the sum of $2,700,000.00 in accordance with the terms and conditions set forth in the Loan Agreement annexed to the Motion as Exhibit "B"</u> and is hereby approved on a final basis.

2.  <u>Upon entry of this order, the Debtor's obligations under the Loan Agreement shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor</u>….

3.  The Debtor is hereby authorized … to use the net loan proceeds to satisfy the pre-petition secured claim of EWE and/or to otherwise satisfy such claim in full.....

4.  The Debtor is hereby authorized to execute and/or deliver any and all documents necessary or required by the Lender to close upon the loan contemplated under the Loan Agreement.

5.  If any or all of the provisions of this Order are hereafter modified, vacated, amended or stayed by subsequent order of this Court or any other Court, such modification, vacatur, amendment or stay sh<u>all not affect the validity of any obligation by the Debtor to the Lender</u> ...

6.  To the extent of any inconsistency between the terms of this Order and the Agreement, the terms and provisions of this Order shall govern.

RJN, Ex. "3" (Order Authorizing AUG to Borrow).  The fact that AUG did not end up being the borrower on the Paradigm loan is irrelevant because it was anticipated by the parties that this would be the case.  The Loan Agreement, attached as Exhibit B to the Motion, and referred to by the Court in its order, reflects that the Debtor may create a new or use another, single purpose, bankruptcy remote entity to be the borrower.  *See* RJN, Ex. "2" (Motion for Order Authorizing Debtor to Obtain Credit Pursuant to 11 USC Section 364(c) and/or (d) and Simultaneously Satisfy Pre-Petition Secured Claims Ancillary Thereto Pursuant to 11 USC Section 506 ("Motion to Borrow"), Docket No. 46)  The Facts that form the basis for the Motion and Order are those that come from declarations and other documents filed under oath by Richard Rudy.

Thus, if Plaintiff is not estopped from taking positions contrary to those representations made by its assignees in the AUG bankruptcy, Camden will be placed at an unfair determent.  If Stillwater and/or Gerova owned the St. Augustine Property, they did so only through AUG, which acted through Richard Rudy.  Plaintiff should not be permitted to assert it had an interest in the

property in this manner and avoid the consequences of representations and positions taken by Rudy and AUG in its bankruptcy case.  Keeping with this logic, Plaintiff seeks to hold Camden liable for transfers of an interest in property due, in part, to a "fraudulent" $2,700,000.00 loan its assignee sought, persuaded the Court to approve with good faith findings, and which it used to pay off its $2,300,000.00 EWE liability.  Plaintiff should not be permitted to assert it received no value for the transfer of the property when AUG was relieved of the $2,300,000.00 EWE liability from the proceeds of the Paradigm Loan and the $2,700,000.00 obligation to Paradigm that the Bankruptcy Court Order imposed upon it "upon entry of the order" when Net Five SB became the borrower on the Paradigm Loan.  Plaintiff should not be permitted to assert that Camden[6] (based in California) should not have granted a loan on the St. Augustine Property (in Florida) because it should have known of the fraud occurring because of the press about New York based Stillwater and Gerova, when just three months before, AUG convinced the Bankruptcy Court sitting in New York to authorize the $2,700,000.00 Paradigm Loan with good faith findings.  Moreover, Camden's $721,000 loan was junior to the Paradigm loan, which Camden took the St. Augustine Property subject to, at a time in which it was in default.  Camden was forced to cure the default and take out the Paradigm loan in order to not lose the St. Augustine Property to this senior security interest.

Similarly, Plaintiff should not be allowed to assert Stillwater and Gerova's rights as a member of Net Five, and then fail to acknowledge the value associated with the $721,000 Camden loan to Net Five SB took or the value to Net Five SB when Camden took the St. Augustine Property pursuant to its security interest in lieu of payment on the loan, released its other security, cured the default on the Paradigm loan and took it out.  Plaintiff's allegations seek to take the benefit of standing in the shoes of multiple different entities under a number of legal theories,

---

[6]And Paradigm for that matter.

without accepting any of the consequences. The irony of the situation is that Plaintiff, assignee of the very parties that perpetrated the alleged fraud, seeks to wear the white hat of a bankruptcy trustee – against a third party lender that gave real value in the form of loan proceeds, the release of the loan obligation and other security interests, paid off default amounts and took out the Paradigm loan.

### F. Camden Gave Value for its Interests in the St. Augustine Property

Camden gave value for its interest in the St. Augustine Property. Plaintiff ignores the fact that Camden made a second position loan to Net Five SB for $721,000 which was secured by the St. Augustine Property, as well as other items of collateral. Camden obtained its ownership interest in the St. Augustine Property in lieu of foreclosure when Net Five SB could not repay the loan. As a result, Camden released its other items of collateral. Plaintiff admits Camden funded $700,000 into an escrow at Net Five SB's request. (Compl., ¶ 137.) Plaintiff admits those funds were stolen by a third party from that escrow and that these funds are being held by the FBI. (Compl., ¶ 137.) Plaintiff has asserted a right in the funds being held by the FBI. (Compl., ¶ 138.) Plaintiff admits that the St. Augustine Property was transferred to Camden with the Paradigm Loan security interest in place. (Compl., ¶ 125-144.) In fact, the Paradigm loan was also in default at that time and Camden had to cure the default and take out the Paradigm Loan in order to not lose the property to the senior security interest. Thus, Camden gave value for its interest in the St. Augustine Property as follows: $700,000 in cash proceeds, release of Net Five SB's loan obligation after the deed in lieu of foreclosure which came subject to the Paradigm senior security interest in an approximate amount of $2,700,000.00, release of the other collateral, as well as payments to cure the Paradigm default and remove the obligation from the property. In addition, Camden has paid to operate the hotel on the property and maintain it since 2012. Thus, Camden gave more than $3,400,000 in value in exchange for its interest in the St. Augustine Property.

Camden gave fair consideration.  A transfer in satisfaction of preexisting debt qualifies as fair consideration for a transfer of property.  *See Pashaian v. Eccelston Props.,* 88 F.3d 77, 85 (2d Cir.1996) ("the satisfaction of a preexisting debt qualifies as fair consideration for a transfer of property."); *In re Sharp Int'l Corp.,* 403 F.3d 43, 54 (2d Cir. 2005) ("Under NYDCL § 272(a), 'fair consideration' is given for property or an obligation: '[w]hen in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied.'"); *In re Dreier LLP*, 452 B.R. 391, 441-442 (Bankr. S.D.N.Y. 2011) (denying trustee recovery under fraudulent transfer statute because "repayment of principal was for a 'fair equivalent' under the NYDCL because such payments extinguished a common law claim, such as restitution …")  In *Sharp*, the Court stated, "[t]he only case found by us or the parties in which an (allegedly) antecedent debt paid to an *outsider* was found lacking in fair consideration is one in which the debtor affirmatively swore that the transaction was intended to evade his creditors." 403 F.3d 43, 54 (2d Cir. 2005) (fair consideration was lacking in the face of evidence "which can admit of no finding other than ... bad faith").  The Second Circuit has steadfastly held that "in general, a transfer for antecedent debt is deemed a good faith transfer," and bad faith will only nullify such a transfer if "the transferee is an officer, director, or major stockholder of the transferor." *In re Dreier LLP*, 452 B.R. 391, 443 (Bankr. S.D.N.Y. 2011) (*citing Atlanta Shipping Corp.,* 818 F.2d at 248–49 (affirming dismissal of claims brought under the constructive fraud provisions of the NYDCL because payments to lender "satisfied an antecedent debt" and lender was not an officer, director or shareholder of transferee).  The Second Circuit in *Sharp,* 403 F.3d at 54, continued, "[B]ad faith does not appear to be an articulable exception to the broad principle that the satisfaction of a preexisting debt qualifies as fair consideration for a transfer of property."  There are no allegations, nor can there be, that Camden

was an officer, director or shareholder of Net Five SB, and as such, when it obtained the Property

after default, in lieu of foreclosure, there was fair value exchanged.

## V.  PLAINTIFF'S TORT AND EQUITABLE CLAIMS ARE BARRED BY THE DOCTRINE OF *IN PARI DELICTO* (COUNTS VIII, IX, XI, XIV, XV, AND XVI)

Plaintiff's tort and equitable claims are barred by the doctrine of *in pari delicto*.  Plaintiff's

theory of the case is that Stillwater intentionally transferred its assets to Gerova and then Gerova

transferred those same assets to Net Five in order to hinder, delay or defraud Stillwater's creditors.

This entire case is about the fraudulent conduct by both Stillwater and Gerova and Net Five.

Plaintiff's tort and equitable claims against Camden for conspiracy to defraud and convert, aiding

and abetting conversion, aiding and abetting breach of fiduciary duty, and unjust enrichment, were

assigned to Plaintiff by the very same parties and are all based upon their improper conduct in

transferring the property to Net Five.  The doctrine of *in pari delicto* "serves to deter illegality by

denying relief to a wrongdoer."  *MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP,* No.

14-CV-2197 (VM), 2014 WL 3402602, at *2-3 (S.D.N.Y. July 9, 2014).

"The doctrine of *in pari delicto* mandates that the courts will not intercede to resolve a

dispute between two wrongdoers." *Kirschner v. KPMG LLP,* 15 N.Y.3d 446, 912 N.Y.S.2d 508,

938 N.E.2d 941, 950 (N.Y.2010) (footnote omitted).  The doctrine prohibits one party from suing

another where the plaintiff was "an active, voluntary participant in the unlawful activity that is the

subject of the suit." *MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP,* No. 14-CV-2197

(VM), 2014 WL 3402602, at *2-3 (S.D.N.Y. July 9, 2014).  *In pari delicto* serves to deter

illegality by denying relief to a wrongdoer and to avoid forcing courts to intercede in disputes

between two wrongdoers.  *See Kirschner,* 912 N.Y.S.2d 508, 938 N.E.2d at 950.  While a claim of

*in pari delicto* sometimes requires factual development and is therefore not amenable to dismissal

at the pleading stage, the doctrine can apply on a motion to dismiss if its application is "plain on

the face of the pleadings."  *Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec.*

LLC ) ("BLMIS "), 721 F.3d 54, 65 (2d Cir.2013)) (*citing Kirschner*, 912 N.Y.S.2d 508, 938 N.E.2d at 946 n. 3).  The traditional principle that a corporation is liable for the acts of its agents and employees applies with full force to the *in pari delicto* analysis.  *See Kirschner*, 912 N.Y.S.2d 508, 938 N.E.2d at 950-51.  Just as a bankruptcy trustee stands in the shoes of the bankrupt corporation[7], Plaintiff stand in the shoes of its assignees.  *In pari delicto* prevents the Plaintiff from recovering in tort if the companies, acting through authorized employees in their official capacities, participated in the tort.  *See BLMIS*, 721 F.3d at 63.  As another Court described the application of *in pari delicto*,

> The Trustee is right, but wrong, because BMIS's causes of action against Defendants are worthless under the doctrine of in pari delicto. As discussed above, Madoff could not recover against Defendants for their joint frauds, breaches of fiduciary duty, conversion, etc.; Madoff's complicity is imputed to BMIS under the law of agency; and the Trustee succeeds only to the rights of BMIS. Completing the analysis, a hypothetical judgment creditor can likewise only succeed to the interest BMIS has in its (worthless) common law claims.

*Picard v. JPMorgan Chase & Co.*, 460 B.R. 84, 97 (S.D.N.Y. 2011) *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54 (2d Cir. 2013).

Whether Plaintiff's claims stem from the Stillwater Funds or Gerova, or their creditors, all are Plaintiff's alleged wrongdoers who's conduct is implied to Plaintiff.  The only factual scenario in which Stillwater and Gerova can state claims for damages for Net Five's fraud, conversion or breach of fiduciary duty, and Camden's alleged complicity in it, is if Stillwater and Gerova were innocent in the Gerova Transfers and Net Five transfers.  If that is the case, then the property transferred could not be considered to be wrongfully taken from Stillwater in the first place.  If not wrongfully taken from Stillwater, then Stillwater's creditors would have no standing to assert

---

[7]"If a claim that the estate inherited from the debtor is barred by defenses that could have been applied against the debtor, the Bankruptcy Code's 'strong-arm' provision does not permit the trustee to step into the shoes of a hypothetical creditor and prosecute the claim free of those defenses; instead, the provision merely enhances the trustee's rights by giving the trustee the power of a hypothetical creditor to attach a judicial lien or bring a creditors' bill for property transferred out of the estate." *In re Greater Se. Cmty. Hosp. Corp.*, 333 B.R. 506 (Bankr. D.D.C. 2005)

these claims and were not damaged.  Because Plaintiff's stands in the shoes of the very wrong doers that it asserts are responsible for the wrongful taking of Stillwater's assets, it cannot seek to have the Court assist it in recovering from those it alleges conspired and aided and abetted with them for doing so.

<u>**CONCLUSION**</u>

Camden requests that the Court dismiss the entire Complaint against it pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) without leave to amend.  Camden did not receive property of the Debtor and, as such, 11 U.S.C. § 544(b) is unavailable to Plaintiff.  All that remains are third party, non-debtor state court and equitable claims that are unrelated to the Debtor's bankruptcy case and, therefore, insufficient to create subject matter jurisdiction.  Moreover, Plaintiff's claims are barred by the doctrine of *in pari delicto* because Plaintiff stands in the shoes of the very wrongdoers with which it alleges Camden conspired and aided and abetted.  Importantly, the alleged fraudulent transfer of the Property at issue in the claims against Camden was authorized by Bankruptcy Court order, found to be negotiated at arm's length, in good faith, for fair value, in the best interest of creditors, and necessary to avoid immediate harm.  Then Camden gave more than $3.4 million in fair value for its interest in the Property which it received in lieu of foreclosure after default.  There is no basis for Plaintiff's claims against Camden and the Complaint should be dismissed without leave to amend.

Dated: March 30, 2015                    SMILEY WANG-EKVALL

By:    /s/ Autumn D. Spaeth
Evan D. Smiley
Autumn D. Spaeth
3200 Park Center Drive, Suite 250
Cosa Mesa, CA 92626
Tel: (714) 445-1000
Fax: (714) 445-1002
esmiley@swelawfirm.com
aspaeth@swelawfirm.com

-and-

<u>/s/ Lucas F. Hammonds</u>
Andrew H. Sherman
Lucas F. Hammonds
101 Park Avenue, 28th Floor
New York, NY 10178
Tel: (212) 643-7000
Fax: (212) 643-6500
asherman@sillscummis.com
lhammonds@sillscummis.com

*Counsel for Camden Real Estate
Opportunity Fund I, LLC*