UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

STILLWATER ASSET BACKED OFFSHORE FUND
LTD.,

                    Debtor.

STILLWATER LIQUIDATING LLC,

                    Plaintiff-Appellant,

                  – against –

NET FIVE PALM POINTE, LLC; NET FIVE
HOLDINGS LLC; PLANET FIVE DEVELOPMENT
GROUP LLC; NET FIVE SOUTH BEACH LLC; NET
FIVE AT KINGS HOTEL LLC; NET FIVE AT
HALLANDATE LLC; BOGGY CREEK VILLAS, LLC;
NET FIVE EAST LYME, LLC; NET FIVE-FDA AT
ISLAMORADA, LLC; 1888 BOGGY CREEK ROAD,
LLC; PLANET FIVE AT GEROVA LLC; PAUL
ROHAN; ERIC HALTER; PARADIGM CREDIT
CORPORATION; SAUNDERS CAPITAL LLC;
CALHOUN COMMERCIAL CONSTRUCTION LLC;
JUDGE STREET REALTY LLC; SFN DEKALB
HOLDINGS LLC; MEMPHIS BLUES ACQUISITION
GROUP, LLC; SHREEJI HOSPITALITY OF
CHARLOTTE, LLC; REDROCK KINGS, LLC; JOHN R.
AND YVETTE DANIEL III; STEPHEN J. AND VICKI
MCDONALD; CL RP STONECREST LLC; 335
WASHINGTON AVENUE – MIAMI BEACH LLC; 347
WASHINGTON AVENUE – MIAMI BEACH LLC; AND
ALMA BANK.,

                  Defendants-Appellees,

GEROVA FINANCIAL GROUP LTD.,

                  Nominal Defendant.

**OPINION AND ORDER**
16 Civ. 8883 (ER)

Ramos, D.J.:

Stillwater Liquidating LLC ("Stillwater Liquidating" or "Appellant") appeals from an

October 26, 2016 Order (the "October Order"), and an October 26, 2016 Judgment (the "October

Judgment") by Bankruptcy Judge Michael E. Wiles for the Southern District of New York.  No.

14–02245 (MEW) Adversary Proceeding ("Adv. Proc."), Docs. 388, 389.  The bankruptcy court

granted in part various motions to dismiss Stillwater Liquidating's First Amended Complaint

("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6), which is applicable to bankruptcy

courts through Federal Rule of Bankruptcy Procedure 7012(b).  For the reasons set forth below,

the appeal is DISMISSED and the bankruptcy court's decision is AFFIRMED.

## I.    Factual and Procedural Background[1]

This appeal arises from an adversary proceeding brought by Stillwater Liquidating in

connection with the bankruptcy of debtor Stillwater Asset Backed Offshore Fund Ltd. (the

"Debtor Fund").  FAC ¶ 1.  Stillwater Liquidating—an entity created pursuant to a settlement

agreement in the underlying bankruptcy proceeding to pursue certain claims—seeks recovery on

behalf of the creditors of the Debtor Fund and eleven other "related" funds that were not debtors

in the underlying bankruptcy proceedings (the "Non-Debtor Funds").  *Id*.  Hereinafter, the Court

refers to the Debtor Fund and the eleven related Non-Debtor Funds collectively as the "Stillwater

Funds."  Stillwater Liquidating alleges that the Stillwater Funds were defrauded when their

assets were transferred to Gerova Financial Group, Ltd. ("Gerova Financial") and Gerova AB

Holdings, Ltd. ("Gerova Holdings," and together, "Gerova")—nearly three years before the

---

[1] This Opinion discusses only those facts necessary to decide the instant appeal.  Familiarity with the underlying
facts and procedural history of this action is otherwise presumed.

Debtor Fund filed its bankruptcy petition—and were then either subsequently transferred to various individual purchasers and entities or used to obtain loans. *Id*. ¶¶ 7–9.

### A.  The Debtor Fund and Related Funds

The Debtor Fund was a Cayman Islands offshore investment company originally formed to invest in a portfolio of loans. *Id*. ¶ 64; No. 12–14140 (MEW) Bankruptcy Petition ("Bankr. Pet."), Doc. 34 at 3.  The Debtor Fund's investments were in the form of "participation interests" in loans issued by Stillwater Asset Backed Fund LP, a Delaware corporation that made real estate loans and other types of loans (the "Delaware Fund").[2]  FAC ¶¶ 2, 63, 69; Bankr. Pet., Doc. 34 at 3.  The Debtor Fund's investments consisted of "participation interests" in 24 loans issued by the Delaware Fund.  FAC ¶ 2.  Each of the Debtor Fund's investments was governed by a Master Loan Participation Agreement ("MLPA") between the Debtor Fund and the Delaware Fund.  *Id*. ¶¶ 2, 71.  The MLPAs define "participation interest" as the undivided beneficial interest of the Debtor Fund in the loan payments and the underlying collateral.  *Id*. ¶ 71.  The MLPAs provided that the Delaware Fund would hold the loan payments and collateral "in trust" in its own name for the *pro rata* benefit of itself and the Debtor Fund.  *Id*. ¶¶ 2, 73; MLPA §§ 1.1, 3.1(a), 3.5.  The MLPAs further state that the agreements "shall not be deemed to represent a pledge of any interest in the Loans by the [Delaware Fund] to the [Debtor Fund]." MLPA § 7.10.  Of the 24 loans issued by the Delaware Fund in which the Debtor Fund invested, 23 were for real property and one was for life insurance policies.  FAC ¶ 2.

Stillwater Capital Partners, Inc. ("SCP") was the outside investment manager of the Debtor Fund.  *Id*. ¶ 54.  It also managed the Non-Debtor Funds.[3]  *Id*. ¶ 58.  SCP is not a party to

---

[2] The Delaware Fund is one of the eleven Non-Debtor Funds that form part of the Stillwater Funds.

[3] The Non-Debtor Funds are comprised of:  (1) the Delaware Fund; (2) Stillwater Asset Backed Fund II LP; (3) SABF II Onshore SPV; (4) Stillwater Asset Backed Fund SPV; (5) Stillwater Market Neutral Fund LP; (6) Stillwater Market Neutral Fund II LP; (7) Stillwater Market Neutral Fund Ltd.; (8) Stillwater Matrix Fund LP; (9)

this action. Other than stating that the Non-Debtor Funds are "related" to the Debtor Fund,

Stillwater Liquidating does not describe the relationship between the funds in great detail.[4] *See*

FAC ¶ 21. The Non-Debtor Funds are not parties to this adversary proceeding.

### B. The Gerova Transfer

On December 31, 2009, SCP caused the Stillwater Funds to enter into an asset purchase

agreement and various merger agreements (collectively, the "Asset Purchase Agreement") with

Gerova.[5] *Id*. ¶¶ 4, 91. Pursuant to the Asset Purchase Agreement, on January 20, 2010, SCP

caused all of the Stillwater Funds' assets—which included the 24 participation interests of the

Debtor Fund in loans issued by the Delaware Fund—to be transferred "in bulk" to Gerova. *Id.*

¶¶ 4, 91. For ease of reference, the Court refers to this transfer as the "Gerova Transfer"

hereinafter. In exchange, Gerova was required to provide the Stillwater Funds with $385 million

worth of stocks, and agreed to assume enumerated liabilities of the Stillwater Funds. *Id.* ¶ 92.

However, Stillwater Liquidating alleges that Gerova never transferred any stocks to the

Stillwater Funds and failed to pay any of their liabilities. *Id.* ¶¶ 4, 96, 98, 102.

Following the Gerova Transfer, the Delaware Fund was merged with Stillwater Asset

Backed Fund II LP, one of the Non-Debtor Funds, into Stillwater Asset Backed Holdings LP. *Id.*

---

Stillwater Real Estate Partners, LP; (10) Stillwater WPB Venture LP; and (11) Stillwater WPB Venture II LP. FAC ¶ 1, n. 3.

[4] This, of course, is in exception to the relationship between the Debtor Fund and the Delaware Fund, which is described throughout the FAC.

[5] Gerova Financial is a Bermuda corporation that was organized as a special purpose acquisition company in 2007 to acquire operating businesses through mechanisms such as capital stock exchange, stock purchase, or asset acquisition. Bankr. Pet. Doc. 34 at 4; FAC ¶ 79. It was initially named Asia Special Situations Acquisitions Company ("ASSAC"), and it entered into many agreements relevant to this adversary proceeding under that entity name. FAC ¶¶ 79, 91. Gerova Holdings is a Cayman Islands exempt company related to Gerova Financial. *Id.* ¶¶ 4, 91. ASSAC owned 100% of the issued and outstanding share capital of Gerova Holdings. On August 24, 2012, Gerova Financial and Gerova Holdings filed Chapter 15 bankruptcy petitions in the United States Bankruptcy Court for the Southern District of New York, which are administered jointly. FAC. ¶ 24. Stillwater Liquidating reached a settlement with Gerova in the Debtor Fund's underlying bankruptcy proceeding, and as such, does not seek to recover from them in this adversary proceeding, despite having named Gerova Financial as a nominal defendant. *Id.*

4

¶ 97.  The Debtor Fund was merged and consolidated into Gerova Asset Backed Holdings LP, a

Delaware entity.  *Id.*  Both of these merged entities were owned and controlled by Gerova

Financial.  *Id.*

### C.  Subsequent Transfers and Encumbrances

In May 2010, Gerova and Planet Five, a Florida-based real estate developer, formed a

joint venture named Net Five Holdings by entering into an operating agreement (the "Operating

Agreement").[6]  *See id*. ¶¶ 25, 103.  Paul Rohan, the founder of Planet Five, serves as the manager

of Net Five Holdings, and Eric Halter served as its Chief Operations Officer during the relevant

time period.  *Id*. ¶¶ 36–37.  As part of its capital contribution to Net Five Holdings, Gerova

contributed more than 100 parcels of property worth tens of millions of dollars.  *Id*. ¶ 113.

Stillwater Liquidating claims that these parcels of property are traceable to the assets originally

transferred from the Stillwater Funds in the Gerova Transfer.  *Id*. ¶ 113.  These assets were then

either used to obtain loans from so-called "Hard Money Lenders" or were purchased by other

individuals and entities (the "Purchaser Defendants").  *Id.* ¶ 148.

Stillwater Liquidating alleges that in many cases, Net Five Holdings first transferred

ownership of the assets to various Special Purpose Entities ("SPEs") it had created for the sole

purpose of facilitating subsequent transfers, in an effort to add layers of complexity and make it

more difficult for creditors of the Stillwater Funds to pursue the assets.[7]  *Id.* ¶ 149.  The SPEs, in

turn, transferred the assets to the Purchaser Defendants.  *Id*.  For many of the transferred assets,

the title records of the properties were either never changed from one of the Stillwater Funds, or

---

[6] Net Five Holdings is a Florida limited liability company, with its principal place of business in Ponte Vedra Beach,
Florida.  FAC ¶ 25.  It is named as a Defendant in this action to the extent that the transfers to Gerova and to Net
Five Holdings are collapsed.  *Id.* ¶ 15(a).

[7] The following SPEs are Defendants in this action:  Net Five at Palm Pointe, LLC; Net Five at South Beach, LLC;
Net Five at Kings Hotel, LLC; Net Five at Hallandate (sic), LLC; Boggy Creek Villas, LLC; Net Five East Lyme,
LLC; Net Five-FDA at Islamorada, LLC; and 1888 Boggy Creek Road, LLC.  FAC ¶ 25.

were only changed belatedly when Net Five Holdings wanted to sell or pledge the assets. *Id.*

The following Purchaser Defendants are the alleged subsequent transferees of the assets at issue

and are Defendants in this case:

- 335 Washington Avenue – Miami Beach, LLC ("335 Washington"), a Florida limited liability company located in Miami, Florida;

- 347 Washington Avenue – Miami Beach, LLC ("347 Washington"), a Florida limited liability company located in Miami, Florida;

- Calhoun Commercial Construction LLC ("Calhoun") located in Calhoun, Georgia;

- Judge Street Realty LLC ("Judge Realty"), located in New York, New York;

- SFN Dekalb Holdings LLC ("SFN"), located in Duluth, Georgia;

- CL-RP Stonecrest LLC ("Stonecrest"), a Georgia limited liability company located in Minneapolis, Minnesota;

- Memphis Blues Acquisition Group, LLC ("Memphis Blues"), located in Eads, Tennessee;

- Shreeji Hospitality of Charlotte, LLC ("Shreeji"), located in Charlotte, North Carolina;

- Redrock Kings, LLC ("Redrock"), located in New York, New York;

- Alma Bank, located in Astoria, New York;

- John R. and Yvette Daniel III, residing in Kennesaw, Georgia; and

- Stephen J. and Vickie McDonald, residing in Roswell, Georgia.

*Id.* ¶¶ 42–53.

The Hard Money Lenders include Defendants Paradigm Credit Corporation ("Paradigm")

and Saunders Capital LLC ("Saunders").[8]  *Id.* ¶¶ 39–40.  Paradigm is located in New York, New

---

[8] The Hard Money Lenders also included, *inter alia*, Camden Real Estate Opportunity Fund LLC ("Camden") and ASGAARD Fund LP ("ASGAARD"), who filed motions to dismiss but subsequently settled with Stillwater Liquidating prior to the filing of the FAC. *Id.* ¶ 12, n. 11.

York, and Saunders is located in New Caanan, Connecticut. *Id.* For some of the assets, the Hard

Money Lenders entered into borrowing agreements with Net Five Holdings, accepting liens on

property that Stillwater Liquidating contends originally belonged to the Stillwater Funds. *Id.* ¶¶

153, 155. Specifically, Paradigm provided two loans to Net Five Holdings on August 5, 2010

and December 20, 2011. *Id.* ¶¶ 159, 190, 271. Saunders provided two loans to Net Five

Holdings on June 11, 2010 and September 17, 2010. *Id.* ¶ 156. These loans allegedly allowed

Net Five Holdings and related Defendants to reap benefits without assuming any of the risks. *Id.*

¶ 155.

### D. The Debtor Fund's Bankruptcy Proceedings

On October 3, 2012, the Debtor Fund filed an involuntary petition for Chapter 11

bankruptcy before Bankruptcy Judge Allan L. Gropper. FAC ¶¶ 20, 125; Bankr. Pet., Doc. 1.

During the bankruptcy proceeding, the Debtor Fund entered into a settlement with, *inter alia*,

Gerova (the "Settlement"). FAC ¶ 24. The Settlement was memorialized by the Global

Settlement Agreement dated December 23, 2013, the Stillwater Agreement dated December 23,

2013, the Stillwater Liquidation LLC Agreement dated July 10, 2014, and the Joint Chapter 11

Plan proposed by the Debtor Fund and the official committee of its unsecured creditors. *Id.* ¶ 20;

Docs. 21–34, 21–35, 21–36, 21–39. On August 13, 2014, Bankruptcy Judge Gropper confirmed

the Joint Chapter 11 Plan. FAC ¶ 22; Bankr. Pet., Doc. 183.

Stillwater Liquidation is a Delaware limited liability company that was formed pursuant

to the Settlement. FAC ¶ 20. The FAC alleges that the Settlement gave Stillwater Liquidating

(1) Gerova's ownership interest in the assets that had belonged to the Debtor Fund and the Non-

Debtor Funds, (2) the Debtor Fund and the Non-Debtor Funds' ownership interests in all of the

7

tangible and intangible assets and claims they formerly owned, and (3) claims against third

parties related to the Gerova Transfer and subsequent transfers. *Id.* ¶ 21.

### E. The Adversary Proceedings

Stillwater Liquidating brought this adversary proceeding in the bankruptcy court on

October 2, 2012. Adv. Proc. Doc. 1. Bankruptcy Judge Gropper initially presided over the

proceedings, but the case was transferred to Bankruptcy Judge Wiles in January 2015. Appellant

Br. at 4. Among other things, Stillwater Liquidating seeks to avoid the transfer of Stillwater

Fund assets to the Purchaser Defendants and the Hard Money Lenders, on the theory that the

Gerova Transfer and Gerova's subsequent transfer of assets to Net Five Holdings were

fraudulent. *See* FAC ¶ 15.

According to Stillwater Liquidating, the Purchaser Defendants and the Hard Money

Lenders should have known that the transfers were illegitimate because the following "red flags"

should have tipped them off that Gerova and Net Five Holdings were fraudsters: (1) Gerova

Financial failed to make financial disclosures after 2009; (2) Gerova Financial's CEO and Board

Chairman resigned in the Spring of 2010 after only three months in that position; (3) in January

2011, Forbes and The Wall Street Journal published articles stating that Gerova Financial was

run by individuals implicated in Ponzi schemes; (4) in January 2011, Dalrymple Finance LLC,

an industry watchdog, filed a report that described Gerova Financial as a "classic fraud"

affiliated with Ponzi scammers; (5) in February 2010, the New York Stock Exchange ("NYSE")

warned Gerova Financial that it may be delisted, and Gerova Financial was eventually delisted in

February 2011; (6) between March and May 2011, various creditors and investors filed a series

of lawsuits against Gerova and Net Five Holdings, including several class actions concerning a

scheme to defraud the Debtor Fund and related funds; and (7) Net Five Holdings and its

subsidiaries were prohibited via a July 12, 2012 court order in one of the class actions from transferring assets without disclosing certain information to the class action plaintiffs. *Id.* ¶¶ 14, 127–145.

On March 30, 2015, Hard Money Lenders Paradigm, ASGAARD, and Camden, and Purchaser Defendants John and Yvette Daniel, and Stephen and Vickie McDonald filed four separate motions to dismiss. Adv. Proc. Doc. 69, 70, 75, 77. On April 13, 2015, Camden sought to join Paradigm and ASGAARD's motions to dismiss. Adv. Proc. Doc. 101. On May 19, 2015, Net Five Holdings, the Net Five SPEs, Rohan, and Halter (collectively, the "Net Five Defendants"), and the Daniels and McDonalds sought to join Camden's motion to dismiss. Adv. Proc. Doc. 132, 133. On May 12, 2015, Stillwater Liquidating filed a supplement to the Complaint at the direction of the bankruptcy court. Adv. Proc. Doc. 130. On May 19, 2015, Purchaser Defendant SFN filed its own motion to dismiss. Adv. Proc. Doc. 135. On January 13, 2016, Stillwater Liquidating filed a motion for leave to amend the Complaint. Adv. Proc. Doc. 215. On March 9, 2016, Camden and ASGAARD settled with Stillwater Liquidating. Adv. Proc. Docs. 274, 275.

On April 22, 2016, Stillwater Liquidating filed the FAC. Adv. Proc. Doc. 297. Specifically, Stillwater Liquidating asserted 16 causes of action.

- Counts I–IV are fraudulent transfer claims under 11 U.S.C. § 544(b) and the New York Debtor and Creditor Law ("NYDCL") §§ 273–276, 278–79 against Gerova Financial, Net Five, and Net Five's SPEs;

- Count V seeks recovery of subsequent transfers under 11 U.S.C. § 544(b) and the NYDCL §§ 278, 279 against Net Five Holdings and its SPEs, the Purchaser Defendants, and Hard Money Lenders;

- Count VI is conversion against Gerova Financial, Net Five Holdings and its SPEs, Rohan, and Halter;

- Count VII is conspiracy to defraud against Gerova Financial, Net Five Holdings and its SPEs, Rohan, and Halter;

- Count VIII is a conspiracy to defraud and convert property against Net Five Holdings and its SPEs, Rohan, Halter, and Hard Money Lenders;

- Count IX is aiding and abetting conversion against Hard Money Lenders;

- Count X is breach of fiduciary duties against Net Five Holdings and its SPEs, Planet Five, Rohan, and Halter;

- Count XI is aiding and abetting breach of fiduciary duty against Hard Money Lenders;

- Count XII is fraudulent misrepresentation against Rohan, Planet Five, and Net Five Holdings and its SPEs;

- Count XIII is breach of contract against Net Five Holdings and its SPEs, Planet Five, and Rohan;

- Count XIV is unjust enrichment against all Defendants;

- Count XV is constructive trust against all Defendants; and

- Count XVI is accounting against all Defendants.

On September 2, 2016, the bankruptcy court issued an opinion dismissing in part and granting in part the various motions to dismiss (the "September Opinion"). Adv. Proc. Doc. 323. On October 26, 2016, the bankruptcy court certified for appeal the claims dismissed with prejudice via the October Order and the October Judgment. Adv. Proc. Docs. 388, 389. Specifically, Judge Wiles dismissed Counts I, II, III, IV, and V against all Defendants with prejudice, dismissed Counts VI, VII, VIII, IX, and XI against Paradigm and Saunders with prejudice,[9] and dismissed Counts XIV, XV, and XVI against Paradigm, Saunders, the Daniels, the McDonalds, SFN, Calhoun, Judge Street, Redrock, Shreeji, Stonecrest, 335 Washington, 347 Washington, and Alma Bank with prejudice. *Id.* While the bankruptcy court dismissed Counts I through V against the Net Five Defendants, it declined to dismiss the remaining claims against

---

[9] The Court notes that there is a seeming inconsistency between the October Order, Adv. Proc. Doc. 388, and the October Judgment, Adv. Proc. Doc. 389, entered on the same day. In the judgment, the bankruptcy court states that Counts I, II, III, IV and V of the FAC are dismissed with prejudice as to all Defendants, and that all other claims asserted against, *inter alia*, Paradigm and Saunders are also dismissed with prejudice. October Judgment ¶¶ 1–2. However, in the order, the bankruptcy court remains silent about Count IX against Paradigm and Saunders. *See* October Order. As the September Opinion dismisses Count IX against Paradigm and Saunders, the Court assumes that the omission in the order is a typographical error.

them because it found that their joinder in motions to dismiss filed by other parties was insufficient to warrant dismissal.  September Opinion at 3.

On November 15, 2016, Stillwater Liquidating filed a notice of appeal from the October Order and October Judgment.  Doc. 1.  Stillwater Liquidating filed its appeal brief on January 20, 2017.  Doc. 20.  On February 17, 2017, February 21, 2017, February 23, 2017, and February 24, 2017, the following Defendants-Appellees filed responses, respectively:  Stonecrest, the Daniels and McDonalds, Paradigm, Saunders, Halter,[10] Shreeji, Judge Realty, Alma Bank, SFN, Redrock, and Calhoun.  Docs. 26, 28–30, 33, 35–36, 38–41, 47, 49.  On March 14, 2017, Stillwater Liquidating filed its reply brief.  Doc. 53.  Stillwater Liquidating voluntarily dismissed with prejudice its claims against 335 Washington and 347 Washington on March 31, 2017.  Docs. 58, 59.

## II.    Standard of Review

### A.  Bankruptcy Appeal

This Court has jurisdiction to hear appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and,] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges."  28 U.S.C. § 158(a)(1), (3).  A district court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error.  *See, e.g., In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir. 1990).  A bankruptcy court's discretionary decisions are reviewed for abuse of discretion.  *See, e.g., In re Boodrow*, 126 F.3d 43, 47 (2d Cir. 1997).

---

[10] Halter did not provide separate arguments and merely joined the existing appellee briefs.

In reviewing a decision of a bankruptcy court, the district court "may affirm on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decision [ ] below." *Freeman v. Journal Register Co.*, 452 B.R. 367, 369 (S.D.N.Y. 2010). But the district court may not consider evidence outside the record. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 339 (S.D.N.Y. 2008). Any arguments not raised in the bankruptcy court are considered waived; unless such a waiver results in manifest injustice, the new arguments will not be considered on appeal. *See In re Lionel Corp.*, 29 F.3d 88, 92 (2d Cir. 1994); *see also, e.g., In re Barquet Grp., Inc.*, 486 B.R. 68, 73 n. 3 (S.D.N.Y. 2012) (citing *In re Enron Corp.*, 419 F.3d 115, 126 (2d Cir. 2005).

### B. Motion to Dismiss

Under Rule 12(b)(6), which applies to bankruptcy courts through Bankruptcy Rule 7012(b), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

*Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from

conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In the Court's review of a Rule 12(b)(6) motion to dismiss, it may consider any

"documents attached to the complaint as an exhibit or incorporated in it by reference." *Carlin v.*

*Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017) (quoting *Chambers v. Time Warner, Inc.*,

282 F.3d 147, 153 (2d Cir. 2002). If a plaintiff's own pleadings are contradicted by matters in

such documents, the Court need not reconcile this difference or accept the plaintiff's pleadings as

true. *Gachette v. Metro N. High Bridge*, No. 12 Civ. 3838 (AJN), 2013 WL 144947, at *1

(S.D.N.Y. Jan. 14, 2013) (citing *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005);

*see also U.S. Bank Nat. Ass'n v. Bank of America, N.A.*, No. 12 Civ. 4873, 2012 WL 6136017, at

*7 (S.D.N.Y. Dec. 11, 2012) ("Where plaintiff's own pleadings are internally inconsistent, a

court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as

true in deciding a motion to dismiss."); *Amidax Trading Group v. S.W.I.F.T. SCRL*, 607 F. Supp.

2d 500, 502 (S.D.N.Y. 2009) ("Where a conclusory allegation in the complaint conflicts with a

statement made in a document attached to the complaint, the document controls and the

allegation is not accepted as true.").

### III.    Discussion

### A.  Bankruptcy Code Section 544

#### 1.  Standing

In Counts I through IV—brought against Gerova Financial as a nominal Defendant and

Net Five Holdings—Stillwater Liquidating alleges that the transfers of the Stillwater Funds'

assets to Gerova, as well as their subsequent transfers to Net Five Holdings, were fraudulent

transfers that were designed to defraud the creditors of the Stillwater Funds.  Am. Compl. ¶¶

389, 397, 405, 413.  Stillwater Liquidating contends that the Stillwater Funds may challenge

those fraudulent transfers pursuant to Bankruptcy Code Section 554(b) and the NYDCL.  *Id*. ¶¶

395, 403, 411, 418.  In Count V—brought against Net Five Holdings and its SPEs, the Purchaser

Defendants, and the Hard Money Lenders—Stillwater Liquidating alleges that it may recover the

fraudulently transferred assets or their values.  *Id*. ¶ 437.  The bankruptcy court dismissed Counts

I through V against all Defendants with prejudice.  October Judgment ¶ 1.  The Court affirms the

bankruptcy court's decision.

Section 554(b) provides that "the trustee may avoid any transfer of an interest of the

debtor in property or any obligation incurred by the debtor that is voidable under applicable law

by a creditor."  11 U.S.C. § 544(b).  This provision allows a trustee or a debtor in possession[11] to

"assert . . . the rights that any individual creditor has under applicable state law to avoid

fraudulent transfers made prior to the filing of the bankruptcy petition."  *Rahl v. Bande*, 316 B.R.

127, 131 (S.D.N.Y. 2004).  Stillwater Liquidating contends that the transfers of the Stillwater

Funds' assets are voidable under New York law, in particular the NYDCL.[12]  *See* FAC ¶¶ 388–

437.  Stillwater Liquidation contends that it is a successor to the Debtor Fund, and as such, it can

bring all claims available to the Debtor Fund, Non-Debtor Funds, and Gerova concerning their

transferred assets pursuant to the Settlement.  Appellant Br. at 3–4; 12–14.  The bankruptcy court

held that Stillwater Liquidating may challenge the pre-petition transfers of the Debtor Fund's

---

[11] Pursuant to Section 1107(a) of the Bankruptcy Code, a debtor-in-possession is vested with substantially all of the rights and powers of a trustee.  11 U.S.C. § 1107(a).

[12] The September Opinion states that it is unclear which law should apply—New York, Delaware, or Cayman Islands law.  September Opinion at 27–29.  However, the bankruptcy court did not reach the choice of law question as the same result would be reached regardless of which law is applied.  *Id*. at 29.  The Court agrees.

assets, but that it does not have standing to challenge the pre-petition transfers of the Non-Debtor

Funds' assets.  September Opinion at 29.

Section 544(b) can be invoked only if there was an actual unsecured creditor *of the*

*debtor* at the time of the pre-petition transfer who could have avoided the transfer.  *Official*

*Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20, 29 (S.D.N.Y. 2002)

("The trustee or debtor in possession can use this power only if there is a valid unsecured

creditor of the debtor that actually has the requisite nonbankruptcy cause of action.") (citing *In re*

*Cybergenics Corp.*, 226 F.3d 237, 243 (3d Cir. 2000)).  Therefore, Section 544(b) cannot be used

to avoid transfers of non-debtor assets.  There is no allegation in the FAC that any of the Non-

Debtor Funds are debtors themselves, and although the exact relationship between the Stillwater

Funds is unclear, they are listed as separate entities.  FAC ¶ 1 n. 3.  Accordingly, the FAC does

not sufficiently allege that any of the Debtor Fund's creditors could have avoided the pre-petition

transfers of the Non-Debtor Funds at the time of the transfers.

Stillwater Liquidating argues that it can nonetheless avoid the transfer of the Non-Debtor

Funds' assets under Section 544(b) because there was substantive consolidation of the Stillwater

Funds' assets during the bankruptcy proceeding, or alternatively, because the Non-Debtor Funds

are alter egos of the Debtor Fund.

Substantive consolidation results in the pooling of assets and claims of multiple entities.

*In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir. 1988).  The liabilities are

satisfied from the resultant common fund, intercompany claims are eliminated, and the creditors

of the entities are combined for the purpose of voting on reorganization plans.  *Id.*  The "sole

purpose" of substantive consolidation is "to ensure the equitable treatment of all creditors" and it

is to be used "sparingly."  *Id.*  Two factors are considered "critical" in assessing whether

15

substantive consolidation is appropriate:  "(i) whether creditors dealt with the entities as a single

economic unit and did not rely on their separate identity in extending credit . . . ; [and]

(ii) whether the affairs of the debtors are so entangled that consolidation will benefit all

creditors."  *Id.* (internal quotations and citations omitted).

Stillwater Liquidating claims that Bankruptcy Judge Gropper *de facto* substantively

consolidated the Debtor Fund's estate with the Non-Debtor Funds in the Joint Chapter 11 Plan.

*See* FAC ¶¶ 174, 207, 234, 264, 265, 292, 293, 308, 344, 359, 386; Reply Br. at 19.  However,

the bankruptcy court below found nothing in the bankruptcy proceeding evincing an order of

substantive consolidation, *de facto* or otherwise.  September Opinion at 30–33.  It found that (1)

there was no consolidation of liabilities because creditors of the Non-Debtor Funds retained their

separate claims against those separate funds; (2) creditors of the Non-Debtor Funds were not

made part of a single class with equal and *pro rata* access to all of the assets of all of the funds;

(3) different "series" of membership interests were established with each series corresponding to

a different fund; and (4) each series member was entitled to a fixed and predetermined

percentage of Stillwater Liquidating's overall recoveries based on the relative asset values of the

funds, and thus, the recovery that a creditor of one fund may receive may be completely different

from the recovery of a creditor of a different fund.  *Id.* at 31–32.  The Court finds no error in

these factual findings, clear or otherwise.  It further agrees that, based on these facts, substantive

consolidation was not obtained via the Joint Chapter 11 Plan.  *See In re LightSquared, Inc.*, 534

B.R. 522, 527 (S.D.N.Y. 2015), *aff'd sub nom. Ahuja v. LightSquared Inc.*, 644 F. App'x 24 (2d

Cir. 2016) (finding that combining two debtors' spectrum assets into a single network is not a

formal substantive consolidation of assets; it is a functional combination); *In re Sabine Oil &

Gas Corp.*, 555 B.R. 180, 317–18 (Bankr. S.D.N.Y. 2016) (refusing to find that the Plan

16

effectuates a *de facto* substantive consolidation because the Plan treats each claim as a separate claim against each applicable entity).

The bankruptcy court also found that Stillwater Liquidating insufficiently alleged that the Non-Debtor Funds were alter egos of the Debtor Fund, and refused to pierce their corporate veils. September Opinion at 34–37. The forum state's choice of law principles determine which state's law applies to determine veil piercing. *Kalb, Voorhis & Co v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993). Under New York choice of law principles, "the law of the state of incorporation determines when the corporate form will be disregarded . . . ." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (citation omitted). To the extent that Stillwater Liquidating seeks to argue that the Non-Debtor Funds are alter egos of the Debtor Fund, it is unclear which state law should apply—with the exception of the Delaware Fund, which was incorporated in Delaware—because the FAC fails to identify where those funds were incorporated.

Under Delaware law, a court may pierce the corporate veil "where there is fraud or where the corporation is in fact a mere instrumentality or alter ego of its owner." *Id.* at 1457 (citation omitted). Under an alter ego theory, a plaintiff need not show fraud, but must show (1) that the parent and the subsidiary operated as a single economic entity and (2) that an overall element of injustice or unfairness is present. *Id.* (citations omitted). The factors to be considered include the following:

> "[W]hether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder."

17

*Id.* at 1458 (citation omitted). "A plaintiff seeking to persuade a Delaware court to disregard the corporate structure faces a difficult task." *NetJets Aviation, Inc. v. LHC Commun., LLC*, 537 F.3d 168, 176 (2d Cir. 2008) (citation omitted). Whether to pierce the corporate veil is generally a factual question, but courts have granted motions to dismiss where there has been a lack of sufficient pleadings to place the alter ego issue in dispute. *Fletcher*, 68 F.3d at 1458 (citations omitted).

Cayman Islands law permits piercing corporate veils, but only in "exceptional cases" where "special circumstances exist indicating that [the corporate form] is a mere façade concealing the true facts." *Beach v. Citigroup Alternative Invs. LLC*, No. 12 Civ. 7717 (PKC), 2014 WL 904650, at *10 (S.D.N.Y. Mar. 7, 2014) (citing *Walker Int'l Holdings Ltd. v. Olearius Ltd.*, [2003] CILR 457 (Grand Ct.) [47172]). "Traditionally, exceptional circumstances have been found when a company (1) engages in conduct that is illegal, or *ultra vires* the company, (2) perpetrates a fraud against the minority shareholders and the wrongdoers are themselves in control of the company, or (3) passes a resolution which requires a qualified majority by a simple majority." *Id.* (citing *Gee v. Attridge*, [1986–87] CILR 343 (Grand Ct.) [347]).

As the bankruptcy court noted below, the only allegations concerning the alter ego argument include that (1) the funds were managed by the same outside investment manager, (2) some of the profitable assets were used to pay fees and support underperforming assets in 2009 without further explanation, (3) some cash flowed through three common accounts "apparently without separate accounting" in 2009 without further explanation, and (4) the investment manager used a portfolio of law firm loans to borrow up to $30 million and did not account for the use of such loan proceeds. FAC ¶¶ 58–61; *see* September Opinion at 37. The Court finds that these allegations merely demonstrate the investment manager's poor record-keeping and

18

confusion of the assets.  The allegations fall short of demonstrating that corporate formalities

were not observed.  Indeed, the FAC demonstrates that at least certain corporate formalities were

recognized as the Debtor Fund obtained participation interests in the Delaware Fund's assets

through formal agreements.  FAC ¶¶ 2, 73–74.  The allegations are also insufficient to show that

the corporate form of the funds was a mere "façade."  Accordingly, the Court finds that the

Delaware Fund is not an alter ego of the Debtor Fund under either Delaware or Cayman Islands

law.[13]

Separately, Stillwater Liquidating contends that the bankruptcy court mistakenly stated

that it had only asserted fraudulent transfer claims under Section 544(b), and therefore

erroneously rejected its fraudulent transfer claims under the NYDCL.  Appellant Brief at 32.

This argument is unavailing because Stillwater Liquidating's fraudulent transfer claims cannot

exist separately from its claims under Section 544(b).  Section 544(b) provides, in relevant part,

that a trustee may avoid any transfer of the debtor that is voidable under applicable law.  11

U.S.C. § 544(b).  As Alma Bank points out in its brief, Section 544(b) and the NYDCL cannot

be interpreted in a vacuum because the former is the *mechanism* by which a trustee can assert

claims arising under the latter.  *See* Doc. 36 at 25.

### 2.  Transfer of Participation Interests

The only assets that the Debtor Fund owned are participation interests in 24 secured loans

made by the Delaware Fund or the Delaware Fund's wholly owned subsidiaries.  FAC ¶ 69.  The

Debtor Fund obtained these participation interests through separate MLPAs that contain identical

relevant terms.  *Id.*  Based on the contractual language, the bankruptcy court held that the Debtor

---

[13] To the extent that either Delaware or Cayman Islands law applies to the other Non-Debtor Funds, the Court
reaches the same conclusion as to those entities.

Fund did not have any ownership interests in the underlying loan or collateral, and thus, that

Stillwater Liquidating cannot void the transfers of such property.  The Court agrees.

A participant in a loan participation agreement has a partial ownership interest in the

"fund received by the [lender] . . . in collecting the loan."  *In re Drexel Burnham Lambert Grp.*

*Inc.*, 113 B.R. 830, 842 (Bankr. S.D.N.Y. 1990).  However, this does not necessarily mean that

the participant has a direct ownership interest, as opposed to beneficial interests held in trust, in

the loan itself.  *See id.* at 844, n. 16.  As a factual matter, the bankruptcy court found that the

MLPAs merely established a trust arrangement, granting the Debtor Fund beneficial interests in

the loans, not direct ownership rights.  September Opinion at 56–59.  The Court finds no error in

this finding, clear or otherwise.  The MLPAs state that the Debtor Fund's participation interest is

an "undivided beneficial interest," provide that the Delaware Fund will hold an undivided

interest in the loan payments and collateral "in trust" for the Debtor Fund, and that any collateral

will be held by the Delaware Fund in its own name for the *pro rata* benefit of both the Delaware

Fund and the Debtor Fund.  MLPA §§ 1.1, 3.1(a), 3.5.  They further specifically state that the

agreements "shall not be deemed to represent a pledge of any interest in the Loans by the

[Delaware Fund] to the [Debtor Fund]."  *Id.* § 7.10.  These provisions demonstrate that the

Debtor Fund merely had a beneficial interest, and received no legal title in the loan itself or the

underlying collateral.  *See Henning v. Rando Mach. Corp.*, 207 A.D.2d 106, 110 (4th Dep't

1994) (the trustees, rather than the beneficiaries of the trusts, are vested with legal title to the

property and are the real parties in interest); 54A Am. Jur. 2d Mortgages § 121 ("[H]olders of

deeds of trust do not have an ownership interest in the land.").

Stillwater Liquidating argues that a transfer of the loan or the underlying collateral is

nonetheless also a transfer of the participation interest because the subsequent transferees

received property unencumbered by any lien, and thus, received the value of the Debtor Fund's

lien. Appellant Br. at 16. However, nowhere in the FAC does Stillwater Liquidating allege that

the underlying loan or collateral was transferred unencumbered by the participation interests.

Rather, the FAC expressly states that the participation interests remained "intact through each

subsequent transfer." *See, e.g.*, FAC ¶¶ 183, 206, 225, 233. Accordingly, the Court finds that

Stillwater Liquidating can only seek to void transfers of the participation interest itself, not of the

underlying loans or collateral.

The FAC contains allegations that the Debtor Fund's participation interests were

fraudulently transferred to Gerova. *Id.* ¶¶ 4, 114. However, Stillwater Liquidating fails to

specifically allege that the participation interests themselves were subsequently transferred or

used to secure loans from the Hard Money Lenders. Stillwater Liquidating only alleges that the

underlying loans or the collateral, encumbered with the participation interests, were transferred.

*See e.g. id.* ¶¶ 183, 225–26, 239–41, 247–48, 269–71, 320–22. As none of the Defendants,

except for Gerova Financial, which is named as a nominal defendant, were transferred the actual

participation interests, the Court affirms the bankruptcy court's decision to dismiss the Section

544(b) claims with prejudice.

### B.  Conspiracy and Aiding and Abetting Claims

In Counts VIII, IX and XI, Stillwater Liquidating brings conspiracy and aiding and

abetting claims. The bankruptcy court dismissed these claims to the extent that they are brought

against the Hard Money Lenders that remain in this action: Paradigm and Saunders. October

Judgment at 2. Stillwater Liquidating alleges that Paradigm and Saunders aided and abetted in

conversion and breach of fiduciary duty, and participated in the conspiracy to convert and

defraud. FAC ¶¶ 460–470; 482–488. Although no party engages in a choice of law analysis, all

parties apply New York law to all of the common law claims, and thus, impliedly consent to the

choice of law. *See Tehran–Berkeley Civil & Environmental Engineers v. Tippetts–Abbett–*

*McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir. 1989) ("[I]mplied consent to use a forum's law is

sufficient to establish choice of law . . ."). Applying New York law, the bankruptcy court held

that Counts VIII, IX and XI against Paradigm and Saunders fail. September Opinion at 80. The

Court affirms.

"Under New York law, the elements of aiding and abetting a breach of fiduciary duty . . .

[and] aiding and abetting a conversion . . . are substantially similar. The claims require the

existence of a primary violation, actual knowledge of the violation on the part of the aider and

abettor, and substantial assistance." *Weshnak v. Bank of Am., N.A.*, 451 F. App'x 61, 61–62 (2d

Cir. 2012). Even assuming that the underlying conversion or breach of fiduciary duty were

adequately alleged, which the bankruptcy court did not find, the Court concludes that Stillwater

Liquidating's allegations of aiding and abetting conversion and breach of fiduciary duty fail. In

New York, the knowledge requirement cannot be satisfied by alleging constructive knowledge.

*See Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996) (noting that New York

"has not adopted a constructive knowledge standard for imposing aiding and abetting liability").

Thus, to survive a motion to dismiss, a plaintiff must allege facts giving rise to a "strong

inference" of actual knowledge of the underlying tort, or the conscious avoidance of the same

such that "it can almost be said that the defendant actually knew because he or she suspected a

fact and realized its probability, but refrained from confirming it in order later to be able to deny

knowledge." *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 367–

68 (S.D.N.Y. 2007).

Stillwater Liquidating fails to allege facts giving rise to a strong inference of actual knowledge of conversion or breach of fiduciary duty, or conscious avoidance. It avers that there were "red flags," and that the Hard Money Lenders "did not perform adequate due diligence" and failed to conduct "further inquiry," but these allegations are insufficient to establish *actual* knowledge. FAC ¶¶ 160–61, 276–77, 280; *Zamora v. JPMorgan Chase Bank, N.A.*, No. 14 Civ. 5344, 2015 WL 4653234, at *3 (S.D.N.Y. July 31, 2015) (finding that allegations that the defendant "should have known" or that there were "red flags" are insufficient to establish actual knowledge). Moreover, Stillwater Liquidating fails to establish facts showing that Paradigm and Saunders specifically avoided learning of the conversion or breach of fiduciary duty that they suspected had occurred, and merely state in a conclusory fashion that the lenders failed to perform adequate due diligence and "turned a blind eye" to information that "should have at least prompted further inquiry" into potential misconduct. FAC ¶¶ 160–61.

Indeed, Stillwater Liquidating has failed to even allege constructive knowledge. Most of the alleged "red flags" concern Gerova, *see* FAC ¶ 172, and Stillwater Liquidating does not allege how facts concerning Gerova's misconduct would have alerted Paradigm and Saunders to Net Five Holdings' alleged role in the scheme to convert and commit breach of fiduciary duty. Furthermore, these red flags largely occurred only after Paradigm and Saunders made their loans to Net Five Holdings. Paradigm provided two loans to Net Five Holdings on August 5, 2010 and on December 20, 2011. *Id.* ¶¶ 159, 190, 271. Saunders provided two loans to Net Five Holdings on June 11, 2010 and on September 17, 2010. *Id.* ¶ 156. However, the press coverage concerning Gerova's misdeeds and class actions all occurred in 2011 and 2012. *Id.* ¶¶ 132–147. Moreover, Stillwater Liquidating's allegations concerning certain irregularities in the underlying

loan documents are also insufficient as it is unclear how they show an implication of fraud or conversion as opposed to poor management and record-keeping.

The Court further finds that Stillwater Liquidating has failed to establish a conspiracy to convert or defraud. New York law does not recognize civil conspiracy as an independent cause of action, but conspiracy allegations may be used to connect actions of separate defendants with an otherwise actionable tort. *Reich v. Lopez*, 38 F. Supp. 3d 436, 460 (S.D.N.Y. 2014), *aff'd,* 858 F.3d 55 (2d Cir. 2017); *Excelsior Capital LLC v. Allen*, No. 11 Civ. 7373 (CM), 2012 WL 4471262, at *12 (S.D.N.Y. Sept. 26, 2012), *aff'd,* 536 F. App'x 58 (2d Cir. 2013). If the underlying tort is adequately pleaded, a plaintiff must further allege the following:

> (i) facts constituting a common agreement or understanding, (ii) a common design or objective, (iii) the tortious or criminal acts committed in furtherance of the common agreement and objective, (iv) the intent and knowledge of the defendants regarding the acts, and (v) damage or injury as a result of the acts of the defendants.

*SungChang Interfashion Co. v. Stone Mountain Accessories, Inc.*, No. 12 Civ. 7280 (ALC), 2013 WL 5366373, at *13 (S.D.N.Y. Sept. 25, 2013). For the same reasons as discussed above, the Court finds that Stillwater Liquidating has failed to establish intent and knowledge of the scheme to defraud or convert. Accordingly, the Court affirms the bankruptcy court's dismissal of Counts VIII, IX, and XI against Paradigm and Saunders.

### C. Unjust Enrichment

In Count XIV, Stillwater Liquidating claims unjust enrichment against all Defendants. The bankruptcy court dismissed this claim with respect to the Purchaser Defendants and the Hard Money Lenders. October Order ¶ 7. To assert unjust enrichment under New York law, a plaintiff must establish (1) that the defendant benefited, (2) at the plaintiff's expense, and (3) that equity and good conscience require restitution. *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks and citation omitted); *accord Paramount Film Distrib. Corp. v.*

*State*, 30 N.Y.2d 415, 421 (1972) ("The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.") (citations omitted).  The essence of an unjust enrichment claim "is that one party has received money or a benefit at the expense of another."  *Kaye*, 202 F.3d at 616 (internal quotation marks and citation omitted).

The bankruptcy court found that Stillwater Liquidating's allegations are insufficient to sustain a claim for unjust enrichment because (1) unjust enrichment cannot be asserted with respect to transactions that are governed by contracts, (2) unjust enrichment cannot be supported if the connection between the parties is too attenuated, and (3) some of the Defendants are not current owners of the properties that were allegedly owned by the funds.  September Opinion at 99–101.  The Court finds that dismissal is warranted based on the first reason and need not reach the others.

As the bankruptcy court noted, the existence of a contract generally bars recovery based on the quasi-contractual theory of unjust enrichment, and the FAC establishes that the challenged transfers were governed by written agreements.  September Opinion at 99.  Stillwater Liquidating objects and claims that this limitation only applies where there is a contract between the party-plaintiff and party-defendant, and states that Stillwater Liquidating has no contracts with the Defendants.  Appellant Br. at 48.  However, recent decisions in New York state courts and this District have found that the existence of a valid and binding contract governing the *subject matter* at issue in a particular case precludes a claim for unjust enrichment even against a non-signatory to that agreement.  *Law Debenture v. Maverick Tube Corp.*, No. 06 Civ. 14320 (RJS), 2008 WL 4615896, at *12 (S.D.N.Y. Oct. 15, 2008) (collecting cases).  Accordingly, the Court affirms the bankruptcy court's decision concerning Count XIV.

25

### D. Constructive Trust

In Count XV, Stillwater Liquidating claims constructive trust against all Defendants. As with Count XIV, the bankruptcy court dismissed constructive trust claims against the Purchaser Defendants and the Hard Money Lenders. October Order ¶ 7. The imposition of a constructive trust under New York law generally requires the following elements to be shown: "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject *res* made in reliance on that promise; and (4) unjust enrichment." *Superintendent of Ins. for the State of N.Y. v. Ochs (In re First Cent. Fin. Corp.)*, 377 F.3d 209, 212 (2d Cir. 2004). These elements are not rigidly limited, and merely serve as guideposts, but the fourth element is the most important, as the purpose of constructive trust is to prevent unjust enrichment. *Id.*; *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 352 (2d Cir. 1992). Moreover, "[w]hile a showing of actual fraud or wrongful conduct is not strictly required for a constructive trust . . . a constructive trust is an equitable remedy intended to be 'fraud-rectifying' rather than 'intent-enforcing.'" *In re First Cent. Fin. Corp.*, 377 F.3d at 216 (citing cases finding that where there was no evidence of fraud or wrongful conduct, the standard for unjust enrichment has not been met, and thus, the invocation of equity cannot be justified).

The bankruptcy court found that there was no such fraud alleged as to the Purchaser Defendants or Hard Money Lenders. September Opinion at 102. The Court agrees. As discussed above, Stillwater Liquidation has fallen short of pleading that the Hard Money Lenders were involved in a conspiracy to defraud or aid and abet. It has also failed to allege fraud or other nefarious conduct against any of the Purchaser Defendants. As such, invoking equity against these Defendants cannot be justified. Accordingly, the bankruptcy court's decision concerning Count XV is affirmed.

## IV.    Conclusion

For the reasons set forth above, the bankruptcy court's October Order and October

Judgment are AFFIRMED.  The letter motion filed by Stillwater Liquidating requesting oral

argument is denied as moot.  The Clerk of the Court is respectfully directed to (1) terminate Doc.

52, (2) docket this decision, and (3) close the case.

It is SO ORDERED.

Dated:    March 30, 2018
          New York, New York

                                        Edgardo Ramos, U.S.D.J.